## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DAVID FRIEDSON, as Stockholders'  )
Representative of the former Stockholders )
of the ZONEPERFECT NUTRITION  )
COMPANY,  )
                                    )
         Plaintiff,  )
                                    )   Case No. 06 CV 00382 GMS
     v.  )
                                    )
ABBOTT LABORATORIES, an Illinois  )
corporation, WELLS FARGO BANK  )
MINNESOTA, a Minnesota corporate trust, )
and SWEET PRODUCTIONS LTD., a New )
York corporation,  )
                                    )
        Defendants.  )

## STIPULATION OF VOLUNTARY DISMISSAL
## OF DEFENDANT WELLS FARGO BANK. N.A.

Plaintiff David Friedson ("Friedson"), defendant Abbott Laboratories ("Abbott")
and defendant Wells Fargo Bank, N.A., erroneously identified in the Complaint as Wells
Fargo Bank Minnesota ("Wells Fargo"), by and through their undersigned counsel,
hereby stipulate as follows:

1.    Wells Fargo is currently holding money pursuant to the Escrow
Agreement between Abbott as Buyer, Friedson as Stockholder Representative and Wells
Fargo as Escrow Agent, dated August 26, 2003 (the "Escrow Agreement"), a copy of
which is attached to this Stipulation as Exhibit A.

2.     Friedson and Abbott dispute who is entitled to payment of the remaining money held by Wells Fargo pursuant to the Escrow Agreement.  That dispute has been presented to this Court in the above-captioned lawsuit.

3.     Friedson and Abbott agree to present any and all claims to the remaining money held by Wells Fargo under the Escrow Agreement for resolution in this lawsuit.

4.     Wells Fargo shall continue to act as Escrow Agent in accordance with the terms of the Escrow Agreement. Wells Fargo shall only release the remaining money held pursuant to the Escrow Agreement upon: (1) a written instruction signed by both Friedson and Abbott representing that this lawsuit has been settled, in whole or in part, directing Wells Fargo how to direct payment of the money it holds, in whole or in part, and agreeing to hold Wells Fargo harmless for complying with such instruction; and/or (2) receipt of a final, non-appealable order of the court (trial or appeals) resolving Friedson's and Abbott's claims and allocating between the parties the remaining money being held by Wells Fargo.

5.     Notwithstanding anything in paragraph 4 to the contrary, Wells Fargo shall remain entitled to payment of its fees, costs and expenses, including deduction of one-half of those fees, costs and expenses from the Escrow Fund (as that term is defined in the Escrow Agreement), in accordance with paragraph 8 of the Escrow Agreement.

6.     Pursuant to Fed. R. Civ. P. 41(a)(1) and the terms of this Stipulation, all claims asserted against Wells Fargo in this lawsuit are voluntarily dismissed.

STIPULATED AND AGREED TO THIS 28th DAY OF SEPTEMBER 2006.

DAVID FRIEDSON                               ABBOTT-LABORATORIES,
By his attorneys,                            By its attorneys,


 /s/ Norman M. Monhait                        /s/ John C. Phillips
Norman M. Monhait (DE I.D. 1040)             John C. Phillips, Jr. (DE I.D.110)
Rosenthal Monhait & Goddess, P.A.            Phillips, Goldman & Spence, P.A.
Citizens Bank Center, Suite 1401             1200 North Broom Street
Wilmington, DE 19801                         Wilmington, DE 19806
(302) 656-4433                               (302) 655-4200


Of Counsel:                                  Of Counsel:
Gerald J. Caruso                             Lawrence R. Desideri
Nor-ul Haq                                   Stephanie S. McCallum
Rubin and Rudman LLP                         Winston & Strawn LLP
50 Rowes Wharf                               35 W. Wacker Drive
Boston, MA 02110                             Chicago, IL 60601
Tel: (617) 330-7000                          Tel: (312) 558-5600
Fax: (617) 330-7550                          Fax: (312) 558-5700



WELLS FARGO BANK, N.A.,
By its attorneys,

 /s/ Joseph B. Cicero
Joseph B. Cicero (DE I.D. 4388)
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
Tel: (302) 777-7770
Fax: (302) 777-7263

Of Counsel:
Steven M. Cowley
Scott R. Magee
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA  02199
Tel: (617) 239-0100
Fax: (617) 227-4420

# Exhibit A

EXECUTION COPY

## ESCROW AGREEMENT

ESCROW AGREEMENT (the "Agreement") dated as of August ] [36], 2003, among Abbott Laboratories, an Illinois corporation ("Buyer"), David Friedson as the stockholder representative and any successor thereto (the "Stockholder Representative"), on behalf of the Stockholders listed on Exhibit A attached hereto (each a "Stockholder" and collectively, the "Stockholders"), and Wells Fargo Bank Minnesota, National Association, a national banking association, as escrow agent (the "Escrow Agent").

## RECITALS

A.     Buyer, ZonePerfect Nutrition Company, a Delaware corporation, and the Stockholders have entered into a Stock Purchase Agreement dated as of July 22, 2003 (the "Purchase Agreement").

B.     Pursuant to Section 2.5 of the Purchase Agreement, the parties hereto are entering into this Agreement in order to provide for the deposit with the Escrow Agent of funds that will be held and disbursed, as hereinafter provided.

C.     Capitalized terms used in this Agreement without definition shall have the respective meanings ascribed to such terms in the Purchase Agreement.

NOW, THEREFORE, the parties hereby agree as follows:

1.     Appointment of the Escrow Agent; Deposit of Escrow Amount. Buyer and the Stockholder Representative hereby constitute and appoint the Escrow Agent as, and the Escrow Agent hereby agrees to assume and perform the duties of, escrow agent under and pursuant to this Agreement and the Purchase Agreement. The Escrow Agent acknowledges receipt of an executed copy of the Purchase Agreement. On the Closing Date, the Escrow Agent will acknowledge in writing the receipt of the amount of $20,000,000 from the Buyer (the "Escrow Amount").

2.     The Escrow Fund.

(a)     With respect to each Stockholder listed on Exhibit A attached hereto, the product of the percentage set forth next to each Stockholder (the "Allocation Percentage"), multiplied by the Escrow Amount (as reduced by any losses on investments), is hereinafter referred to as the "Individual Escrow Fund," and the total Individual Escrow Funds, collectively, are hereinafter referred to as the "Escrow Fund." The Allocation Percentages when added together total 100%. The Escrow Fund shall be held by the Escrow Agent in accordance with the terms and conditions hereinafter set forth.

(b)     The Escrow Fund shall be held by the Escrow Agent as an escrow fund in a separate account maintained for the purpose, on the terms and subject to the conditions of this Agreement. The Escrow Agent shall maintain for each Stockholder (i) a spreadsheet-based accounting of such Stockholder's Individual Escrow Fund reflecting (x) such Stockholder's allocable portion of the Escrow Fund minus (y) any amounts distributed to such Stockholder or a Buyer Indemnified Party in accordance with this Agreement and (ii) a spreadsheet based accounting of such Stockholder's income earned or realized on any cash or

884691.12.01

permitted investment set forth in Section 3 hereof (each an "Individual Income Account"). For the avoidance of doubt, no income (whether interest or otherwise) earned or realized on the Escrow Fund shall be included in or constitute a part of the Escrow Fund, and such income shall be distributed to the Stockholders in accordance with Section 3(c) below. The Escrow Fund shall not constitute property of the Stockholder Representative or the Stockholders and shall not be subject to lien or attachment by any creditor and any party hereto and shall be used solely for the purpose set forth in this Agreement. Except as set forth in Section 8 hereof, amounts held in the Escrow Fund shall not be available to, and shall not be used by, the Escrow Agent to set off any obligations of Buyer or the Stockholder Representative owing to the Escrow Agent in any capacity. The parties acknowledge that the property rights of Buyer or the Stockholder Representative in the Escrow Fund, if any, shall be limited to their right to receive distributions therefrom in accordance with this Agreement.

(c)     If at the end of any calendar quarter the balance in the Escrow Fund is below (i) $20,000,000 (or such lesser amount as reduced by payment of any Owed Amount or Other Amount, as applicable) for any such calendar quarter prior to the Partial Release Date or (ii) $10,000,000 (or such lesser amount as reduced by payment of any Owed Amount or Other Amount, as applicable) for any such calendar quarter after the Partial Release Date but prior to the Termination Date (in either case, the "Minimum Escrow Amount"), then each Stockholder shall contribute to the Escrow Fund an amount in accordance with his/her/its Allocation Percentage so that the Escrow Fund equals the applicable Minimum Escrow Amount. The Escrow Agent shall calculate the balance of the Escrow Fund at the end of each calendar quarter, and if the Escrow Fund is below the applicable Minimum Escrow Amount, the Escrow Agent shall issue a notice of the amount of the difference between the applicable Minimum Escrow Amount and the then-current balance in the Escrow Fund (the "Shortfall") to the Stockholder Representative within three (3) business days of the end of such calendar quarter, and concurrently provide a confirming copy to Buyer.  The Stockholder Representative shall communicate to each Stockholder such Stockholder's pro rata portion of the Shortfall (each, an "Individual Shortfall") and each Stockholder shall have thirty (30) days from the end of such calendar quarter to contribute such Stockholder's Individual Shortfall.  If any Stockholder does not make such contribution within such thirty (30) day period, then the following shall apply:  (i) the income earned (whether interest or otherwise) in any successive quarter will be applied to any such Individual Escrow Fund to the extent of such Stockholder's Individual Shortfall, (ii) the Escrow Agent shall make no further disbursements to such Stockholder, including without limitation any on the Partial Release Date, pursuant to Section 3(c) until the Termination Date, for such time as the Stockholder has an Individual Shortfall or (iii) the income earned (whether interest or otherwise) in any successive quarter to the extent of such Stockholder's Individual Shortfall will become part of any such Individual Escrow Fund subject to claims of the Buyer.

3.     Investment of the Escrow Fund; Taxes; Distribution of Income.

(a)     As directed in writing by the Stockholder Representative, the Escrow Agent shall invest and reinvest all cash funds held from time to time as part of the Escrow Fund, in any of the following kinds of investments, or in any combination thereof which in any case shall only be denominated in United States dollars:

(i)     bonds or other obligations of, or guaranteed by, the government of the United States of America or any State thereof or the District of Columbia, or agencies of any of the foregoing, having maturities of not greater than 90 days (or if earlier, the

Termination Date (as defined in Section 5)); provided that such bonds or other obligations are rated at least "AA" by Moody's Investors Service, Inc. ("Moody's") and "AA" by Standard & Poor's Corporation ("S&P");

(ii) commercial paper rated, at the time of the Escrow Agent's investment therein or contractual commitment providing for such investment, at least "P-1" by Moody's and "A-1" by S&P and having maturities of not greater than 90 days (or, if earlier, the Termination Date);

(iii) corporate obligations rated, at the time of the Escrow Agent's investment therein or contractual commitment providing for such investment, among the two highest ratings by any nationally recognized statistical ratings organization and having maturities of not greater than 90 days (or, if earlier, the Termination Date);

(iv) demand or time deposits in, certificates of deposit of, or bankers' acceptances issued or managed by (A) a depository institution, trust company or bank subsidiary incorporated under the laws of the United States of America, any State thereof or the District of Columbia or (B) a United States branch office or agency of a foreign depository institution or trust company, if in any such case, the depository institution, trust company or office or agency described in subclause (A) or (B) has combined capital and surplus of not less than $500,000,000 and rated at least AA by Moody's and S&P (any such institution being herein called a "Permitted Bank") having maturities of not greater than 90 days (or, if earlier, the Termination Date); or

(v) money market mutual funds rated at least "AAA" by Moody's and S&P.

(b) For Federal income tax purposes only, all income on the Escrow Fund shall be treated as property of the Stockholders and includible in the taxable income of the Stockholders. The Escrow Agent shall have no duty or obligation with respect to notifying any party of any taxes due or monitoring the payment of any taxes, or tax reporting to the IRS.

(c) Subject to Section 2(c), at the end of each calendar quarter during the term of this Agreement and on each of the Partial Release Date and the Termination Date, the Escrow Agent shall, as notified in writing by the Stockholder Representative (with a confirming copy sent to Buyer), transfer from each Individual Escrow Fund to a sub-account which shall be in the sole control of the Stockholder Representative (the "Release Account") the sum of all income (whether interest or otherwise) earned as of such date on such Individual Escrow Fund. Any amounts distributed to the Stockholder Representative pursuant to this Section 3(c) shall be distributed by the Stockholder Representative to each Stockholder in accordance with such Stockholder's Individual Income Account.

4. Claims Against the Escrow Fund; Minimum Escrow Amount.

(a) Buyer shall give the Escrow Agent written notice of any claim for payment due to Buyer pursuant to Section 7.4(b) of the Purchase Agreement (a "Claim Notice"). Concurrently with the delivery of a Claim Notice to the Escrow Agent, Buyer will deliver to the Escrow Agent a certificate in substantially the form of Annex I attached hereto (a "Certificate of Instruction"). No Certificate of Instruction may be delivered by Buyer after 5:00 p.m. New York

3

City time on the business day immediately preceding the Termination Date (as defined below). The Escrow Agent shall give written notice to Buyer and the Stockholder Representative of its receipt of a Certificate of Instruction not later than the second business day next following receipt thereof, together with a copy of such written notice of claim for payment due to Buyer and such Certificate of Instruction.

(b)     If the Escrow Agent (i) shall not, within thirty (30) calendar days following its receipt of a Certificate of Instruction (the "Objection Period"), have received from the Stockholder Representative a certificate in substantially the form of Annex II attached hereto (an "Objection Certificate") disputing the right of the applicable indemnified party (the "Buyer Indemnified Party") to the Owed Amount (as defined in the Certificate of Instruction) referred to in such Certificate of Instruction, or (ii) shall have received such an Objection Certificate within the Objection Period and shall thereafter (whether before or after the end of the Objection Period) have received either (x) a certificate from Buyer and the Stockholder Representative substantially in the form of Annex III attached hereto (a "Resolution Certificate") stating that Buyer and the Stockholder Representative have agreed that the Owed Amount referred to in such Certificate of Instruction (or a specified portion thereof) is payable to one or more of the Buyer Indemnified Parties or (y) a copy of a final, non-appealable order of a court of competent jurisdiction (a "Court Order") accompanied by a certificate of Buyer and the Stockholder Representative substantially in the form of Annex IV attached hereto (a "Court Order Certificate") stating that the Owed Amount referred to in such Certificate of Instruction (or a specified portion thereof) is payable to one or more of the Buyer Indemnified Parties, then the Escrow Agent shall, on the second business day next following (I) the expiration of the Objection Period or (II) the Escrow Agent's receipt of a Resolution Certificate or a Court Order Certificate, as the case may be, pay over to the Buyer from the Escrow Fund, by wire transfer of immediately available funds to a bank account of Buyer's designation, the amount set forth in said Certificate of Instruction, or if such Resolution Certificate or Court Order Certificate specifies that an amount other than such Owed Amount is payable, such other amount (the "Other Amount"); provided that (1) if the underlying indemnity claim for payment is made pursuant to Section 7.4(b)(ii) or (iii) (for breach of a covenant or agreement by a Stockholder) of the Purchase Agreement, the Escrow Agent shall pay to Buyer such Owed Amount or Other Amount, as the case may be, out of the Individual Escrow Fund relating to the Stockholder to which such claim relates and (2) for any other indemnity claim, the Escrow Agent shall pay to Buyer out of each Individual Escrow Fund, an amount equal to the Owed Amount, or such Other Amount, as the case may be, multiplied by the applicable Allocation Percentage.

(c)     The Escrow Agent shall give written notice to Buyer and the Stockholder Representative of its receipt of an Objection Certificate not later than the second business day next following receipt thereof, together with a copy of such Objection Certificate. The Escrow Agent shall give written notice to Buyer and the Stockholder Representative of its receipt of a Resolution Certificate or a Court Order Certificate not later than the second business day next following receipt thereof, together with a copy of such Resolution Certificate or Court Order Certificate, as the case may be.

(d)     Upon the payment by the Escrow Agent of the Owed Amount referred to in a Certificate of Instruction, such Certificate of Instruction shall be deemed cancelled. Upon the receipt by the Escrow Agent of a Resolution Certificate or Court Order Certificate and the payment by the Escrow Agent of the Owed Amount (or if such Resolution

4

Certificate or Court Order Certificate specifies, such Other Amount), the related Certificate of Instruction shall be deemed cancelled.

(e)    Upon Buyer's determination that it has no claim or has released or withdrawn without prejudice its claim with respect to an Owed Amount referred to in a Certificate of Instruction (or a specified portion thereof), Buyer shall promptly deliver to the Escrow Agent a certificate substantially in the form of Annex V attached hereto (a "Buyer Cancellation Certificate") canceling such Certificate of Instruction (or such specified portion thereof, as the case may be), and such Certificate of Instruction (or portion thereof) shall thereupon be deemed cancelled. The Escrow Agent shall give written notice to Buyer and the Stockholder Representative of its receipt of a Buyer Cancellation Certificate not later than the second business day next following receipt thereof, together with a copy of such Buyer Cancellation Certificate.

(f)    Upon receipt of a final, non-appealable order of a court of competent jurisdiction stating that it is a final order and that none of the Owed Amount referred to in a Certificate of Instruction as to which the Stockholder Representative delivered an Objection Certificate within the Objection Period is payable to any Buyer Indemnified Party pursuant to Section 7.4 of the Purchase Agreement, Buyer and the Stockholder Representative shall promptly deliver to the Escrow Agent a copy of such order (accompanied by a certificate substantially in the form of Annex VI attached hereto (a "Cancellation Certificate")) canceling such Certificate of Instruction, and such Certificate of Instruction shall thereupon be deemed cancelled. The Escrow Agent shall give written notice to the Company, Buyer and the Stockholder Representative of its receipt of a Cancellation Certificate not later than the second business day next following receipt thereof, together with a copy of such Cancellation Certificate.

5.    Release of Escrow Fund; Termination Date.

(a)    The Escrow Agent shall, as notified (subject to the provisions of Section 4 above) in writing by the Stockholder Representative (with a confirming copy sent to Buyer), transfer from each Individual Escrow Fund to the Release Account on the eighteen (18) month anniversary of the date hereof (the "Partial Release Date"), an amount equal to (x) fifty percent (50%) of the initial balance of such Individual Escrow Fund, less (y) the sum of all Owed Amounts and Other Amounts paid or payable from such Individual Escrow Fund, less (z) the sum of any amounts that may be payable from such Individual Escrow Fund designated in Certificates of Instruction received by the Escrow Agent prior to 5:00 p.m. New York City time on the business day immediately preceding the Partial Release Date that have not been cancelled in accordance with paragraph (d), (e) or (f) of Section 4.

(b)    The Escrow Agent shall, as notified (subject to the provisions of Section 4 above) in writing by the Stockholder Representative (with a confirming copy sent to Buyer), transfer from each Individual Escrow Fund to the Release Account on the twenty-four (24) month anniversary of the date hereof (the "Termination Date"), an amount equal to (x) the remaining balance of such Individual Escrow Fund, less the sum of (y)(A) any amounts that may be payable from such Individual Escrow Fund designated in Certificates of Instruction received by the Escrow Agent prior to 5:00 p.m. New York City time on the business day immediately preceding the Termination Date that have not been cancelled in accordance with paragraph (d),

5

(e) or (f) of Section 4 and (B) such Stockholder's proportionate share of the fees and expenses of the Escrow Agent to be deducted from the Escrow Fund as set forth in Section 8.

(c)    If at any time after the Termination Date the entire balance of an Individual Escrow Fund exceeds the sum at that time of the amounts relating to such Individual Escrow Fund designated in Certificates of Instruction received by the Escrow Agent prior to the Termination Date that have not been cancelled in accordance with paragraph (d), (e) or (f) of Section 4, the Escrow Agent shall promptly transfer to the Release Account the amount of such excess. At such time on or following the Termination Date as all Certificates of Instruction with respect to an Individual Escrow Fund received by the Escrow Agent prior to 5:00 p.m. New York City time on the business day immediately preceding the Termination Date have been cancelled in accordance with paragraph (d), (e) or (f) of Section 4, the Escrow Agent shall promptly transfer to the Release Account the balance in such Individual Escrow Fund. Promptly following any such transfer to the Release Account, the Escrow Agent shall provide written notice of such transfer to Buyer and the Stockholder Representative. Funds (if any) deposited and held from time to time pursuant to this Agreement in the Release Account shall be released only to the Stockholder Representative, as instructed in writing by the Stockholder Representative. After all funds have been disbursed from the Escrow Account and the Release Accounts, this Agreement (other than Sections 6, 7 and 8) shall automatically terminate.

(d)    Any amount of the Escrow Fund distributed to the Stockholder Representative pursuant to Section 5(a), (b), or (c), above, shall be distributed by the Stockholder Representative to each Stockholder in accordance with such Stockholder's Individual Escrow Fund.

6.    <u>Duties and Obligations of the Escrow Agent</u>. The duties and obligations of the Escrow Agent shall be limited to and determined solely by the provisions of this Agreement and the certificates delivered in accordance herewith, and the Escrow Agent is not charged with knowledge of or any duties or responsibilities in respect of any other agreement or document (including the Purchase Agreement). In furtherance and not in limitation of the foregoing:

(a)    the Escrow Agent shall not be liable for any loss of interest or any penalty sustained or imposed as a result of investments, reinvestments, sales or liquidations made hereunder in accordance with the terms hereof, including any liquidation of any investment of the Escrow Fund prior to its maturity effected in order to make a payment (including any payment of taxes) required by the terms of this Agreement;

(b)    the Escrow Agent shall be fully protected and shall incur no liability in relying in good faith upon any written certification, notice, direction, request, waiver, consent, receipt or other document delivered to the Escrow Agent as provided herein that the Escrow Agent reasonably believes to be genuine and duly authorized, executed and delivered;

(c)    the Escrow Agent shall not be liable for any error of judgment, or for any action taken, suffered or omitted by it, or for any mistake in fact or law, or for anything that it may do or refrain from doing in connection herewith; <u>provided</u>, <u>however</u>, that notwithstanding any other provision in this Agreement, (a) the Escrow Agent shall be liable for its <u>willful misconduct or gross negligence or breach of this Agreement; and (b) in no event shall</u> the Escrow Agent be liable for special, punitive, indirect, consequential or incidental loss or

6

damage of any kind whatsoever (including, but not limited to, lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage;

(d)    the Escrow Agent may seek the advice of legal counsel selected with reasonable care in the event of any dispute or question as to the construction of any of the provisions of this Agreement or its duties hereunder, and it shall incur no liability and shall be fully protected in respect of any action taken, omitted or suffered by it in good faith in accordance with the opinion of such counsel;

(e)    in the event that the Escrow Agent shall in any instance, after seeking the advice of legal counsel pursuant to the immediately preceding clause, in good faith be uncertain as to its duties or rights hereunder, it shall be entitled to refrain from taking any action in that instance and its sole obligation, in addition to those of its duties hereunder as to which there is no such uncertainty and which are not impacted by such uncertainty, shall be to keep safely all property held in the Escrow Fund until it shall be directed otherwise in writing by each of the parties hereto or by a final, nonappealable order of a court of competent jurisdiction; provided, however, in the event that the Escrow Agent has not received such written direction or court order within one hundred eighty (180) calendar days after requesting the same, it shall have the right to interplead any interested party in any court of competent jurisdiction and request that such court determine its rights and duties hereunder;

(f)    the Escrow Agent may execute any of its powers or responsibilities hereunder and exercise any rights hereunder either directly or by or through agents or attorneys selected with reasonable care; and

(g)    nothing in this Agreement shall be deemed to impose upon the Escrow Agent any duty to qualify to do business in any jurisdiction other than Minnesota or to act as fiduciary, and the Escrow Agent shall not be responsible for and shall not be under a duty to examine into or pass upon the validity, binding effect, execution or sufficiency of this Agreement or of any agreement amendatory or supplemental hereto.

7.    Cooperation.  Buyer and the Stockholder Representative shall provide to the Escrow Agent all instruments and documents within their respective powers that are necessary for the Escrow Agent to perform its duties and responsibilities hereunder.

8.    Fees and Expenses; Indemnity.  The fees, costs and expenses of the Escrow Agent for its services hereunder shall be paid one-half by Buyer and one-half shall be deducted by the Escrow Agent directly from the Escrow Fund, such deduction to be allocated to the Stockholders' Individual Escrow Funds in accordance with their respective Allocation Percentages, prior to any payments or releases therefrom pursuant to Section 5; provided that in no event shall (i) the initial acceptance fee exceed $1,000 and (ii) the annual administration, transaction and other fees exceed $2,500 per year in the aggregate.  Subject to the foregoing limitations on fees, Buyer and the Stockholder Representative shall jointly and severally indemnify the Escrow Agent and shall reimburse the Escrow Agent for, and hold it harmless against, any loss, damages, judgment, fine, penalty, claim, demand, settlement, cost or expense, including but not limited to reasonable attorneys' fees, reasonably incurred by the Escrow Agent in connection with acceptance and administration of this Agreement and its performance of its duties and obligations under this Agreement, as well as the reasonable costs and expenses of defending against any claim or liability relating to this Agreement; provided that notwithstanding

7

the foregoing, neither of the Buyer nor the Stockholder Representative shall be required to indemnify the Escrow Agent for any such loss, liability, cost or expense arising as a result of the Escrow Agent's willful misconduct or gross negligence or breach of this Agreement.

        9.      <u>Resignation and Removal of the Escrow Agent</u>.

        (a)      The Escrow Agent may resign as such thirty (30) calendar days following the giving of prior written notice thereof to Buyer and the Stockholder Representative. In addition, the Escrow Agent may be removed and replaced on a date designated in a written instrument signed by Buyer and the Stockholder Representative and delivered to the Escrow Agent. Notwithstanding the foregoing, no such resignation or removal shall be effective until a successor escrow agent has acknowledged its appointment as such as provided in paragraph (c) below. In either event, upon the effective date of such resignation or removal and upon receipt by the Escrow Agent of any fees, costs and expenses owed or due to it, if any, hereunder the Escrow Agent shall deliver the property comprising the Escrow Fund to such successor escrow agent, together with such records maintained by the Escrow Agent in connection with its duties hereunder and with respect to the Escrow Fund as such successor may reasonably request.

        (b)      If a successor escrow agent shall not have acknowledged its appointment as such as provided in paragraph (c) below, in the case of a resignation, prior to the expiration of thirty (30) calendar days following the date of a notice of resignation, or in the case of a removal, on the date designated for the Escrow Agent's removal, as the case may be, because Buyer and the Stockholder Representative are unable to agree on a successor escrow agent, or for any other reason, the Escrow Agent may petition a court of competent jurisdiction to select a successor and any such resulting appointment shall be binding upon all of the parties to this Agreement.

        (c)      Upon written acknowledgment by a successor escrow agent appointed in accordance with the foregoing provisions of this Section 9 of its agreement to serve as escrow agent hereunder and the receipt of the property then comprising the Escrow Fund, the Escrow Agent shall be fully released and relieved of all duties, responsibilities and obligations under this Agreement, subject to the proviso contained in clause (c) of Section 6, and such successor escrow agent shall for all purposes hereof be the Escrow Agent.

        10.    <u>Notices</u>. All notices, requests and other communications hereunder must be in writing and shall be deemed to have been duly given if delivered personally or by facsimile transmission (promptly followed by a hard-copy delivered in accordance with this Section 10) or mailed (certified return receipt) to the parties at the following addresses or facsimile numbers:

        (a)      if to the Stockholder Representative to:

David Friedson
300 Central Park West, Apt. 21D
New York, NY 10024
Fax No.: (305) 364-0502

with a required copy to:

Dechert LLP
1717 Arch Street
Philadelphia, PA  19103
Attn:  Christopher G. Karras, Esq.
Fax No.: (215) 994-2222

and

Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA  02110
Attention:  Michael Unger
Fax No.: (617) 439-9556

(b)    if to Buyer to:

Abbott Laboratories
Ross Products Division
625 Clevaland Ave.
Columbus, OH  43215
Attention:  President
Fax No.:   (614) 624-7030

with a required copy to:

Abbott Laboratories
100 Abbott Park Road
Abbott Park, IL  60064
Attention:  Senior Vice President, Secretary
            and General Counsel
Fax No.:   (847) 938-6277

(c)    If to the Escrow Agent:

Wells Fargo Bank Minnesota, National Association
Corporate Trust
Sixth and Marquette
MAC N9303-110
Minneapolis, Minnesota  55479
Facsimile No.: (612) 667-2160
Attention:  Jayne E. Sillman

All such notices, requests and other communications will (i) if delivered personally to the address as provided in this Section, be deemed given upon delivery, (ii) if delivered by facsimile transmission to the facsimile number as provided in this Section, be deemed given upon receipt, and (iii) if delivered by mail (certified return receipt) in the manner described above to the address as provided in this Section, be deemed given upon receipt (in each case regardless of

whether such notice, request or other communication is received by any other Person to whom a copy of such notice is to be delivered pursuant to this Section). Any party from time to time may change its address, facsimile number or other information for the purpose of notices to that party by giving notice specifying such change to the other parties hereto.

11.    Amendments, etc. This Agreement may be amended or modified, and any of the terms hereof may be waived, only by a written instrument duly executed by or on behalf of Buyer and the Stockholder Representative and, with respect to any amendment that would adversely affect the Escrow Agent, the Escrow Agent. No waiver by any party of any term or condition contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a waiver of the same or any other term or condition of this Agreement on any future occasion.

12.    Business Day. For all purposes of this Agreement, the term "business day" shall mean a day other than Saturday, Sunday or any day on which banks located in the City of New York, New York are authorized or obligated to close.

13.    Miscellaneous. This Agreement is binding upon and will inure to the benefit of the parties hereto and their respective successors and permitted assigns. The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof. This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

14.    Governing Law; Consent to Jurisdiction.

(a)    This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware applicable to agreements made and to be performed wholly within that jurisdiction. Each party hereto, for itself and its successors and assigns, irrevocably agrees that any suit, action or proceeding arising out of or relating to this Agreement may be instituted in the United States District Court located in Delaware or in the absence of jurisdiction, the state courts located Delaware, and generally and unconditionally accepts and irrevocably submits to the non-exclusive jurisdiction of the aforesaid courts and irrevocably agrees to be bound by any final judgment rendered thereby from which no appeal has been taken or is available in connection with this Agreement. Each party, for itself and its successors and assigns, irrevocably waives any objection it may have now or hereafter to the laying of the venue of any such suit, action or proceeding, including, without limitation, any objection based on the grounds of forum non conveniens, in the aforesaid courts.

15.    Severability. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void, or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect.

## [SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

ABBOTT LABORATORIES

By: _____
Name: Gary L. Flynn
Title: Senior Vice President


_____
Name: David Friedson, as
      Stockholder Representative


WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By: _____
Name:
Title

11

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

ABBOTT LABORATORIES

By: _____
Name:
Title:


Name: David Friedson, as
      Stockholder Representative


WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By: _____
Name:
Title

11

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

ABBOTT LABORATORIES

By:    _____
Name:
Title:



_____
Name: David Friedson, as
          Stockholder Representative



WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By:    
Name:    JAYNE SILLMAN
Title    Assistant Vice President

11

EXHIBIT A

| **Stockholders** | **Allocation Percentage** |
| --- | --- |
| Anasazi Partners | [ ___ ]% |
| Christopher P. Baker | [ ___ ]% |
| Lawrence Chud | [ ___ ]% |
| Douglas M. Hagge | [ ___ ]% |
| Steven Lampe | [ ___ ]% |
| Rainer Park | [ ___ ]% |
| William Paul Pruett | [ ___ ]% |
| Robert Rafferty | [ ___ ]% |
| Godfrey Rockefeller, Jr. | [ ___ ]% |
| David Sloan | [ ___ ]% |
| Tanya Spear | [ ___ ]% |
| David Thibodeau | [ ___ ]% |
| Bagus Tjahjono | [ ___ ]% |
| **TOTAL** | 100.00% |

| | Class A Shares | Class C Shares % of Total Shares Equivalent | Owned | Amount of Escrow | | Pro Rata Escrow |
|---|---|---|---|---|---|---|
| Christopher Perry Baker | 230 | 690,000 | 15.2% | $ 20,000,000.00 | $ | 3,041,874.71 |
| | 30 | 90,000 | 2.0% | $ 20,000,000.00 | $ | 396,766.27 |
| | 17 | 51,000 | 1.1% | $ 20,000,000.00 | $ | 224,834.22 |
| | - | 93,750 | 2.1% | $ 20,000,000.00 | $ | 413,298.19 |
| | - | 34,855 | 0.8% | $ 20,000,000.00 | $ | 153,658.76 |
| | - | 11,237 | 0.2% | $ 20,000,000.00 | $ | 49,538.47 |
| | *Sub-total* | *970,842* | *21.4%* | | *$* | *4,279,970.62* |
| Anasazi Partners | 948 | 2,844,000 | 62.7% | $ 20,000,000.00 | $ | 12,537,814.03 |
| | *Sub-total* | *2,844,000* | *62.7%* | | *$* | *12,537,814.03* |
| Steven Lampe | 45 | 135,000 | 3.0% | $ 20,000,000.00 | $ | 595,149.40 |
| | - | 46,667 | 1.0% | $ 20,000,000.00 | $ | 205,732.13 |
| | *Sub-total* | *181,667* | *4.0%* | | *$* | *800,881.53* |
| Larry Chud | 60 | 180,000 | 4.0% | $ 20,000,000.00 | $ | 793,532.53 |
| | 20 | 60,000 | 1.3% | $ 20,000,000.00 | $ | 264,510.84 |
| | *Sub-total* | *240,000* | *5.3%* | | *$* | *1,058,043.38* |
| Bagus Tjahjono | - | 22,500 | 0.5% | $ 20,000,000.00 | $ | 99,191.57 |
| | - | 12,500 | 0.3% | $ 20,000,000.00 | $ | 55,106.43 |
| | *Sub-total* | *35,000* | *0.8%* | | *$* | *154,297.99* |
| William Paul Pruett | - | 65,000 | 1.4% | $ 20,000,000.00 | $ | 286,553.41 |
| | - | 20,000 | 0.4% | $ 20,000,000.00 | $ | 88,170.28 |
| | *Sub-total* | *85,000* | *1.9%* | | *$* | *374,723.70* |
| Godfrey Anderson Rockefeller | - | 10,000 | 0.2% | $ 20,000,000.00 | $ | 44,085.14 |
| | - | 5,000 | 0.1% | $ 20,000,000.00 | $ | 22,042.57 |
| | *Sub-total* | *15,000* | *0.3%* | | *$* | *66,127.71* |
| David Sloan | - | 39,167 | 0.9% | $ 20,000,000.00 | $ | 172,668.27 |
| | *Sub-total* | *39,167* | *0.9%* | | *$* | *172,668.27* |
| David Thibodeau | - | 15,000 | 0.3% | $ 20,000,000.00 | $ | 66,127.71 |
| | - | 5,000 | 0.1% | $ 20,000,000.00 | $ | 22,042.57 |
| | *Sub-total* | *20,000* | *0.4%* | | *$* | *88,170.28* |
| Robert Rafferty | - | 17,500 | 0.4% | $ 20,000,000.00 | $ | 77,149.00 |
| | - | 5,000 | 0.1% | $ 20,000,000.00 | $ | 22,042.57 |
| | *Sub-total* | *22,500* | *0.5%* | | *$* | *99,191.57* |
| Rainer Park | - | 27,500 | 0.6% | $ 20,000,000.00 | $ | 121,234.14 |
| | - | 12,500 | 0.3% | $ 20,000,000.00 | $ | 55,106.43 |
| | *Sub-total* | *40,000* | *0.9%* | | *$* | *176,340.56* |
| Tanya Spear | - | 6,000 | 0.1% | $ 20,000,000.00 | $ | 26,451.08 |
| | *Sub-total* | *6,000* | *0.1%* | | *$* | *26,451.08* |
| Douglas Marty Hagge | - | 37,500 | 0.8% | $ 20,000,000.00 | $ | 165,319.28 |
| | *Sub-total* | *37,500* | *0.8%* | | *$* | *165,319.28* |
| | **Total:** | **4,536,676** | **100.0%** | | **$** | **20,000,000.00** |

Adams, Harkness & Hill, Inc. – Confidential

<u>Exhibit B</u>
<u>Shareholder Indemnification</u>

| Name | Percentage |
| --- | --- |
| Christopher P. Baker | 21.4% |
| Steven G. Lampe | 4.0% |
| Larry Chud | 5.3% |
| David M. Sloan | 0.9% |
| Douglas M. Hagge | 0.8% |
| Rainer Park | 0.9% |
| William Paul Pruett | 1.9% |
| Robert Bruce Rafferty II | 0.5% |
| Godfrey Anderson Rockefeller, Jr. | 0.3% |
| Tanya Spear | 0.1% |
| David Thibodeau | 0.4% |
| Bagus Tjahjono | 0.8% |
| Anasazi Partners, Limited Partnership | 62.7% |

EXECUTION COPY

ANNEX I

CERTIFICATE OF INSTRUCTION

to

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

as Escrow Agent

The undersigned, Abbott Laboratories, an Illinois corporation ("Buyer"), pursuant to

Section 4(a) of the Escrow Agreement dated as of _____ ___, 2003, among Buyer,

the Stockholder Representative and you (the "Escrow Agreement") (terms defined in the Escrow

Agreement have the same meanings when used herein), hereby:

        (a)    certifies that (i) Buyer has sent to the Escrow Agent and the Stockholder Representative a Claim Notice, a copy of which is attached hereto, and (ii) the amount of $_____ (the "Owed Amount") is payable to the Buyer Indemnified Parties pursuant to Section 7.4(b) of the Purchase Agreement by reason of the matter described in such Claim Notice; and

        (b)    instructs you to pay to Buyer from the Escrow Fund the Owed Amount, by wire transfer of immediately available funds to Buyer's account at _____, _____, _____, _____, (Account No.: _____), unless you receive an Objection Certificate from the Stockholder Representative prior to the expiration of the Objection Period. If you receive an Objection Certificate within the Objection Period, within two business days following your receipt of a Resolution Certificate, you are to pay to Buyer the amount specified in such Resolution Certificate or Court Order Certificate, as the case may be.

ABBOTT LABORATORIES

By:    _____

        Name:
        Title:

Dated: _____, _____

884691.12.01

ANNEX II

OBJECTION CERTIFICATE

to

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

as Escrow Agent

The undersigned, Stockholder Representative pursuant to Section 4(b) of the Escrow

Agreement dated as of _____, ___, 2003 among Buyer, the Stockholder

Representative and you (the "Escrow Agreement") (terms defined in the Escrow Agreement have

the same meanings when used herein), hereby:

    (a)    disputes that the Owed Amount referred to in the Certificate of Instruction dated _____, _____ is payable to the Buyer Indemnified Parties pursuant to the Purchase Agreement;

    (b)    certifies that the undersigned has sent to Buyer a written statement dated _____, _____ of the undersigned, a copy of which is attached hereto, disputing its liability to the Buyer Indemnified Parties for the Owed Amount; and

    (c)    objects to your making payment to Buyer as provided in such Certificate of Instruction.

STOCKHOLDER REPRESENTATIVE

By:    _____

       Name: _____, as
               Stockholder Representative

Dated: _____, ___

14

ANNEX III

## RESOLUTION CERTIFICATE

to

## WELLS FARGO BANK MINNESOTA,
## NATIONAL ASSOCIATION

as Escrow Agent

The undersigned, Abbott Laboratories, an Illinois corporation ("<u>Buyer</u>") and the

Stockholder Representative pursuant to Section 4(b) of the Escrow Agreement dated as of

_____ \_\_\_, 2003, among Buyer, the Stockholder Representative and you (the "<u>Escrow</u>

<u>Agreement</u>") (terms defined in the Escrow Agreement have the same meanings when used

herein), hereby:

    (a)    certify that (i) Buyer and the Stockholder Representative have resolved their dispute as to the matter described in the Certificate of Instruction dated _____, \_\_\_ and the related Objection Certificate dated _____, \_\_\_ and (ii) the final Owed Amount with respect to the matter described in such Certificates is $_____ ;

    (b)    instruct you to pay to Buyer from the Escrow Fund the final Owed Amount referred to in clause (ii) of paragraph (a) above, by wire transfer of immediately available funds to Buyer's account at _____, _____, _____, _____, (Account No.: _____) within two business days of your receipt of this Certificate; and

    (c)    agree that the Owed Amount designated in such Certificate of Instruction, to the extent, if any, it exceeds the Owed Amount referred to in clause (ii) of paragraph (a) above, shall be deemed not payable to the Buyer and such Certificate of Instruction is hereby cancelled.

ABBOTT LABORATORIES

By: _____
        Name:
        Title:

15

Name: _____, as
Stockholder Representative

Dated: _____, ____.

COURT ORDER CERTIFICATE

to

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

as Escrow Agent

The undersigned, Abbott Laboratories, an Illinois corporation ("Buyer") and the

Stockholder Representative pursuant to Section 4(b) of the Escrow Agreement dated as of

_____, \_\_\_, 2003 among the Stockholder Representative, Buyer and you (the

"Escrow Agreement") (terms defined in the Escrow Agreement have the same meanings when

used herein), hereby:

(a)    certifies that (i) attached hereto is a final non-appealable order of a court of competent jurisdiction resolving the dispute between Buyer and the Stockholder Representative as to the matter described in the Certificate of Instruction dated _____ \_\_, 20\_\_ and the related Objection Certificate dated _____ \_\_, 20\_\_ and (ii) the final Owed Amount with respect to the matter described in such Certificates, as provided in such order is $_____;

(b)    instructs you to pay to Buyer from the Escrow Fund the Owed Amount referred to in clause (ii) of paragraph (a) above, by wire transfer or immediately available funds to Buyer's Account at _____, _____, _____, _____ (Account No.: _____) within two business days of your receipt of this Certificate; and

(c)    agrees that the Owed Amount designated in such Certificate of Instruction, to the extent, if any, it exceeds the Owed Amount referred to in clause (ii) of paragraph (a) above, shall be deemed not payable to the Buyer and such Certificate of Instruction is hereby cancelled.

ABBOTT LABORATORIES

By:    _____
       Name:
       Title:

17

Name: _____, as
              Stockholder Representative

Dated: _____, ____

ANNEX V

BUYER CANCELLATION CERTIFICATE

to

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

as Escrow Agent

The undersigned, Abbott Laboratories, an Illinois corporation (the "Buyer") pursuant to

Section 4(e) of the Escrow Agreement dated as of _____, ___, 2003 among the

Stockholder Representative, Buyer and you (the "Escrow Agreement") (terms defined in the

Escrow Agreement have the same meanings when used herein), hereby:

(a)    certifies that (i) it hereby releases or withdraws without prejudice its claim with respect to [all] [specify portion] of the Owed Amount designated in the Certificate of Instruction dated _____, ____ and (ii) as a result, the Owed Amount with respect to such Certificate of Instruction is $_____; and

(b)    agrees that such Certificate of Instruction is, to the extent of the claim released or withdrawn without prejudice as provided in clause (i) of paragraph (A) above, cancelled.

ABBOTT LABORATORIES

By:    _____
       Name:
       Title:

Dated: _____, ____

19

ANNEX VI

CANCELLATION CERTIFICATE

to

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

as Escrow Agent

The undersigned, Abbott Laboratories, an Illinois corporation ("Buyer") and the

Stockholder Representative pursuant to Section 4(f) of the Escrow Agreement dated as of

_____, ___, 2003 among the Stockholder Representative, Buyer and you (the

"Escrow Agreement") (terms defined in the Escrow Agreement have the same meanings when

used herein), hereby certify that (i) attached hereto is a final, non-appealable order of a court of

competent jurisdiction resolving the dispute between Buyer and the Stockholder Representative

as to the matter described in the Certificate of Instruction dated _____ __,

20__ and the related Objection Certificate dated _____ __, 20__ and (ii) as

provided in such order, there is no Owed Amount with respect to the matter described in such

Certificates.

ABBOTT LABORATORIES

By:      _____
         Name:
         Title:


         _____
         Name: _____, as
               Stockholder Representative

20

Dated: _____

21