UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID FRIEDSON, as Stockholders' Representative of the former Stockholders of the ZONEPERFECT NUTRITION COMPANY,<br><br>                    Plaintiff,<br><br>          v.<br><br>ABBOTT LABORATORIES, an Illinois corporation<br>                              Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **CASE NO. 06 CV 00382 GMS**<br>)<br>)<br>)<br>)<br>) |

## JOINT STATUS REPORT

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 16.2(b), and in accordance with the Order of the Court dated December 14, 2006, David Friedson, as Stockholders' Representative of the former Stockholders of the ZonePerfect Nutrition Company and Abbott Laboratories (collectively "the Parties") hereby provide the following Joint Status Report.

1.      **Jurisdiction and Service**

No outstanding issues.  Defendants previously filed a Notice of Removal after plaintiffs filed this action in Massachusetts state court.  By an Order dated June 8, 2006, the Court (Zobel, J.) denied plaintiff's motion to remand and transferred this case to the District of Delaware based on a forum selection clause in the contract between the Parties.

All parties have been served.

2.    **Substance of the Action**

The plaintiff and counter-defendant in this action, David Friedson, is the representative for the former stockholders of ZonePerfect Nutrition Company ("ZonePerfect"). Abbott Laboratories is the defendant and counter-plaintiff. On July 22, 2003, the Parties entered into a Stock Purchase Agreement ("SPA") whereby Abbott purchased all of the stock of ZonePerfect for $165 million. Under the terms of this agreement, $20 million of the purchase price was placed in escrow to cover various indemnification provisions contained within the SPA.

This action is principally brought to determine who is entitled to approximately $6,151,194.35 which currently remains in escrow. Of that amount, $4,987,960.00 relates to a representation that the former shareholders made that Chris Baker, the former CEO of ZonePerfect, could secure a new extension of the Manufacturing Agreement that ZonePerfect had with Sweet Productions Ltd. ("Sweet"), the manufacturer of the ZonePerfect Nutritional Bars. The extension needed to contain certain terms spelled out in the SPA, including, but not limited to, a price reduction of 2.5¢ based upon a weighted average price formula contained in the SPA. The closer Baker came to the 2.5¢ reduction, the more money the shareholders would receive from the Escrow Funds, up to $10 million. Friedson contends (but Abbott disputes) that Baker came very close to the 2.5¢ figure, but needs discovery to determine how close precisely.

The SPA required Baker "to negotiate, but not execute a written agreement" with Sweet. (*See* SPA at Section 7.4(b)(x)). Friedson contends that Baker satisfied all of the conditions and obligations placed upon him by the SPA by having Sweet sign an unsigned letter from Chris Baker. Friedson contends that Abbott could have executed that letter which Friedson contends met all the conditions of Section 7.4(b)(x) of the SPA. Abbott contends that Sweet revoked the

2

offer contained in that letter before Abbott had the ability to execute it and in any event that even if Abbott could have executed the letter, all of the terms of Section 7.4(b)(x) were not met in that letter.

Additionally, Friedson brings claims for a breach of the implied covenant of good faith and fair dealing as well as unfair and deceptive practices act violations under both Massachusetts and Delaware law. For these claims, Friedson alleges that Abbott did not execute the unsigned letter in order to negotiate further beneficial terms with Sweet, and compounded the deceptive practices by making a claim against the Escrow Funds.

Abbott contends that since Baker did not satisfy the obligations under Section 7.4(b)(x) of the SPA that there can be no violations of either the implied covenant of good faith and fair dealing or any Unfair and Deceptive Practices violations. Further, Abbott asserts that it did not act in bad faith by not executing the unsigned letter from Baker since it did not have the opportunity to do so before the offer was revoked by Sweet. Moreover, Abbott contends that the Massachusetts Unfair and Deceptive Practices Act violation was previously dismissed by Judge Zobel before she transferred this case to Delaware. As a consequence, Abbott has counterclaimed asserting that it is entitled to a declaratory judgment for the money in escrow.

In addition to Abbott's Declaratory Judgment claim, Abbott also has brought a claim for violations of the implied covenant of good faith and fair dealing with respect to approximately $900,000 of Escrowed Funds to which Abbott contends that the shareholders previously admitted its entitlement by representing that they were seeking approximately $5.1 million of the approximately $6.1 million of the Escrow Funds in dispute. Friedson contends that apart from the claim for $4,987,960.00, Abbott has never made a claim for $900,000.00 against the Escrow

Funds in accordance with the escrow procedures  and seeks evidence as to the correct amount, since Abbott controls all of ZonePerfect's records.

The remaining amount in dispute arises from a $1,163,234.35 claim that Abbott  made against the Escrowed Funds for what Abbott claimed were a series of misrepresentations on ZonePerfect's financial statements.  Friedson maintains that Abbott's financial statement claims lack merit because they either concern items (1) that were charged or invoiced after the latest date (June 30, 2003) of any Financial Statement supported by a representation in the SPA; or (2) that Abbott, now in possession of the ZonePerfect files, has failed to document.  Abbott believes that these financial inaccuracies are appropriately charged to the former shareholders pursuant to the SPA and that it has provided the shareholders with the all the documentation necessary to support its claims.

3.    **Identification of Factual and Legal Issues**

a.    Whether the former stockholders satisfied the conditions set forth in Section 7.4(b)(x) of the SPA;

b.    Whether the financial statements are in full compliance with and in satisfaction of the conditions, representations, and warranties contained in Section 4.1(f) of the SPA;

c.    The reason Abbott did not execute Baker's unsigned letter with Sweet;

d.    Whether Abbott acted in an unfair or deceptive manner and in bad faith in not executing Baker's unsigned letter with Sweet and/or in making claims against the escrow funds;

e.    Whether the stockholders violated the covenant of good faith and fair dealing with respect to approximately $900,000 of the escrowed funds;

4

f.    The amount due and owing to the stockholders and/or Abbott under the terms of the SPA and/or Escrow Agreement.

**4.    Narrowing of Issues**

The Parties anticipate that the Rule 56 motions may be filed on issues related to contract interpretation.  Friedson also anticipates that a motion may be filed to determine whether Delaware law or Massachusetts law should apply to decide the unfair trade practices claim at issue in this case. Abbott believes that this issue has already been determined by the contract between the parties as well as Judge Zobel's decision in Massachusetts.  Finally, the Parties agree that prompt discovery is likely to narrow the issues and to assist in identifying any issues that could be the subject of dispositive or partially dispositive motions.

**5.    Relief**

Plaintiff seeks declaratory judgment; compensatory damages; treble damages; attorneys' fees and costs; and other such relief that this Court deems just and proper.  Plaintiff requires discovery to calculate the specific sum of damages that they will seek at trial.

For its counterclaims, Defendant seeks declaratory judgment, costs, attorneys fees, and such other relief that this Court deems just and proper.

**6.    Amendment of Pleadings and Joinder of Parties**

Although the Parties do not anticipate filing any motions to amend or to join additional Parties at this time, the Parties respectfully request sixty (60) days after the commencement of discovery to file any such motion.

7.    **Discovery, Including Electronic Discovery**

The Parties anticipate that ten months will be needed for fact and expert discovery due to the number of parties involved in this action and that these parties are located in different states. The parties have set forth a proposed schedule for this matter under item 12.

The Parties propose discovery limitations consistent with LR 26.1.

The Parties anticipate that a Protective Order will be necessary to protect confidential, proprietary, and trade secret information that may be disclosed during discovery.

The Parties discussed the production of electronic discovery. The Parties previously placed a litigation "hold" on all potential discovery at the commencement of this dispute. The parties agreed that, to the maximum extent possible, keyword search or similar devices will be used to decrease the burden of electronic discovery. Furthermore, the parties have agreed that based on the litigation holds that were placed on the parties witnesses, back-up tape searching will not be necessary. However, both Parties reserve the right to request a back-up tape search if circumstances change or the material produced suggests that such a search is necessary. The Parties also agreed that the format for production of electronic production will be either pdf or tiff format and that any documents produced electronically will be produced in a manner that permits text searching.

8.    **Estimated Trial Length**

Plaintiff believes that a full trial of this matter would take six days. Defendant believes the trial will take 4 days.

9.    **Jury Trial**

Both parties have demanded a jury trial.

6

**10.    Settlement**

The Parties have attempted to settle the case and have participated in an unsuccessful mediation in an attempt to do so. They are open to further settlement negotiations, but believe that further discovery is required before the Parties may progress in their negotiations.

**11.    Other Matters**

The Parties are optimistic that they will be able to cooperate to ensure the just, speedy, and inexpensive determination of this action and respectfully propose the following schedule:

| | Item | Time Allowed | Proposed Deadline |
|---|---|---|---|
| 1. | Automatic Disclosures | 2 days after Rule 16 conference | January 5, 2007 |
| 2. | Amendment of Pleadings | 60 days after commencement of discovery | March 1, 2007 |
| 3. | Fact Discovery | 8 months | August 30, 2007 |
| 4. | Expert Discovery | 2 months | October 30, 2007 |
| 5. | Opening Expert Reports | 14 days after close of fact discovery | September 13, 2007 |
| 6. | Rebuttal Expert Reports | 10 days after deadline for opening expert reports | September 24, 2007 |
| 7. | Opening Summary Judgment Papers | | November 13, 2007 |
| 8. | Answering Summary Judgment Papers | 14 court days after service of opening briefs | December 5, 2007 |
| 9. | Reply Summary Judgment Papers | 7 court days after service of reply briefs | December 14, 2007 |
| 10. | Daubert Motions | | January 4, 2008 |
| 11. | Opposition to Daubert Motions | 10 court days after service of moving brief | January 18, 2008 |
| 12. | Reply to Daubert Motions | 5 court days after service of opposition | January 25, 2008 |
| 13. | Hearing on Daubert Motions | To Be Scheduled By the Court | |
| 14. | Hearing on Motions in Limine | To Be Scheduled By the Court | |
| 15. | Hearing on Summary Judgment Motions | To Be Scheduled By the Court | |

| | | To Be Scheduled By the Court | |
|---|---|---|---|
| 16. | Oppositions to Motions in Limine | To Be Scheduled By the Court | |
| 17. | Reply to Motions in Limine | To Be Scheduled By the Court | |
| 18. | Joint Pretrial Statement | To Be Scheduled By the Court | |
| 19. | Pre-trial conference | To Be Scheduled By the Court | |
| 20. | Trial | To Be Scheduled By the Court | |

## 12. **Certification of Conference**

The undersigned counsel for the Parties have conferred and are in agreement that

this Joint Status Report sets forth their collective position(s) on each of the foregoing matters.


DAVID FRIEDSON
By his attorneys,


/s/ Norman M. Monhait
Norman M. Monhait (DE I.D. 1040)
Rosenthal Monhait & Goddess, P.A.
Citizens Bank Center, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433

Admitted Pro Hac Vice:
Gerald J. Caruso
Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
Tel: (617) 330-7000
Fax: (617) 330-7550

ABBOTT-LABORATORIES,
By its attorneys,


/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (DE I.D.110)
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

Admitted Pro Hac Vice:
Lawrence R. Desideri
Stephanie S. McCallum
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: 312-558-5600
Fax: 312-558-5700

8

CERTIFICATE OF SERVICE

       I, John C. Phillips, Jr., hereby certify that on December 27, 2006 two copies of the Joint Status Report were served via hand delivery on the following:

Norman M. Monhait (DE I.D. 1040)
Rosenthal Monhait & Goddess, P.A.
Citizens Bank Center, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433

                                            /s/ John C. Phillips, Jr.
                                            John C. Phillips, Jr.