IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

DAVID FRIEDSON, as Stockholders'         :
Representative of the former Stockholders :
of the ZONEPERFECT NUTRITION          :
COMPANY,                                  :
          Plaintiff,                        :
                                            :
v.                                        :    Civil Action No. 06-382 (GMS)
                                            :
ABBOTT LABORATORIES and WELLS       :
FARGO BANK MINNESOTA, a Minnesota   :
corporate trust, and SWEET PRODUCTIONS :
LTD., a New York corporation,             :
                                            :
          Defendants.                       :

------------------------------------------------------------x

## NOTICE OF SERVICE OF SUBPOENA

          **PLEASE TAKE NOTICE** that on the 2nd day of May, 2007, a copy of the attached subpoena duces tecum was served upon the Pascarella Law Firm.

ROSENTHAL MONHAIT & GODDESS, P.A.

By: _____

Norman M. Monhait (#1040)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, Delaware 19899-1070
(302) 656-4433
Attorneys for Plaintiff

OF COUNSEL:

Gerald J. Caruso
Amy M. McCallen
RUBIN & RUDMAN LLP
50 Rowes Wharf
Boston, MA 02110

May 15, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of May, 2007, a copy of this **Notice**

**Of Service Of Subpoena** was served, by electronic filing, upon:

> John C. Phillips, Jr., Esquire
> Phillips Goldman & Spence, P.A.
> 1200 North Broom Street
> Wilmington, Delaware 19806
>
> Joseph B. Cicero, Esquire
> Edwards Angell Palmer & Dodge LLP
> 919 Market Street, 15th Floor
> Wilmington, Delaware 19801

Norman M. Monhait (#1040)
ROSENTHAL MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
Citizens Bank center
P.O. Box 1070
Wilmington, Delaware 19899
(302) 656-4433
Email: nmonhait@rmgglaw.com

Case 1:06-cv-00382-GMS    Document 55    Filed 05/15/2007    Page 3 of 30

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF _____

Southern District of New York

David Friedson

V.

Abbott Laboratories

### SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1] 06 CV 00382 GMS

United States
District Court
District of Delaware

TO: Pascarella Law Firm
1551 Franklin Avenue
Mineola, NY 11501

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

[X] YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto

| PLACE | DATE AND TIME |
|---|---|
| William B. Schreiber, Esq., Wormser, Kiely, Galef & Jacobs, 825 Third Avenue, New York, NY, 10022 | 9:00 am-May 21, 2007 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 4/27/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Amy M. McCallen, Esq., Rubin and Rudman LLP, 50 Rowes Wharf, Boston, MA 02110, (617) 330-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B)   If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A - PASCARELLA LAW FIRM, LLC

### DEFINITIONS

1.    "ZonePerfect" shall refer to ZonePerfect Nutrition Company and the past officers, directors, employees, affiliates, agents, counsel, attorneys, and other representatives of such entity.

2.    "Stockholder(s)" shall refer to the former stockholders of ZonePerfect and the attorneys, agents and representatives acting on behalf of each.

3.    "Stockholders' Representative" or "plaintiff" shall refer to plaintiff David Friedson as Stockholders' Representative for the former stockholders of ZonePerfect and his agents or representatives.

4.    "Abbott" shall refer to defendant Abbott Laboratories; its corporate parent, subsidiaries, affiliates or divisions, including but not limited to, Ross Products Division ("Ross"), ZonePerfect after Abbott purchased ZonePerfect, or any other incorporated or unincorporated division of Abbott; and the past or present officers, directors, employees, partners, consultants, and other Persons acting on behalf of each of the foregoing.

5.    "Sweet" shall refer to Sweet Productions, Ltd. and the past or present officers, directors, employees, partners, consultants, Persons acting on its behalf, attorneys, corporate parent, subsidiaries, or affiliates acting on behalf of each.

6.    "Pascarella Law Firm" refers to the law firm controlled by James Pascarella and located at both 775 Park Avenue, Suite 255, Huntington, New York 11743 and 1551 Franklin Avenue, Mineola, New York 11501.

743576_1

7.    "Dechert" refers to the law firm of Dechert LLP, its officers, directors, employees, affiliates, agents, lawyers, counsel and other representatives of such Dechert LLP.

8.    "Purchase Agreement" shall refer to the Stock Purchase Agreement executed by Abbott, ZonePerfect, and the Stockholders on or about July 22, 2003.

9.    "Bars" shall refer to the ZonePerfect Nutrition Bars sold by ZonePerfect and, after the transaction described in the Purchase Agreement, by Abbott whether manufactured by Sweet or by any other Person.

10.    "Other Product" means any good or service manufactured for, sold to, or otherwise provided to or on behalf of Abbott by Sweet or by any other Person.

11.    "Manufacturing Agreement" refers to the Agreement between Sweet and ZonePerfect dated November 27, 2001, as extended and amended by letters dated October 30, 2002 and October 30, 2003.

12.    "And" shall mean "and" as well as "or."

13.    "Communication(s)" shall mean the disclosure, transfer, exchange or transmission of any form of information, or request for information, by any means whatsoever including written, oral, in electronic media or otherwise, from one Person to another Person, whether made face to face, by correspondence, by email, by telephone, or by any other means and includes, without limitation, all inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, correspondence, memoranda, telegrams, telexes, telecopies, or other forms of exchange, whether written or oral or electronic, whether sent or received.

14.   The term "Document" is used in the broadest possible sense permitted by Fed. R. Civ. P. 34 and means, without limitation, all documents, electronically stored information or writings containing written or printed material, symbols or a physical image or sound, and includes, but is not limited to, any and all written, recorded or graphic matter of every type and description, however and by whomever prepared, whether signed or unsigned, prior versions, preliminary, reviewed draft, other draft or final, produced, reproduced, disseminated or made, that is in the possession, custody or control of the Person to whom this request is directed. A non-identical copy is considered a separate document for purposes herein.

15.   The term "Person" shall refer to any and all individuals and natural persons, and also includes any and all firms, corporations, organizations, partnerships, limited liability companies, joint ventures, associations, governmental entities and agencies, commissions and any other entity.

16.   "You," "Your," and "Yours" or any form of these pronouns refers to Sweet.

17.   "August Letter Agreement" shall mean the August 25, 2003 Letter executed by Paul Schacher, President of Sweet, on August 26, 2003.

18.   "September 23 Abbott Redraft" means the letter production agreement to prepare Bars as proposed by Abbott to Sweet on or about September 23, 2003.

19.   "September 30 Letter" shall mean the September 30, 2003 letter sent by Paul Schacher to Ned R. McCoy, Director of Business Development, Ross Products Division, Abbott Laboratories, attached hereto as Exhibit A.

20.     "October Letter Agreement" shall mean the October 30, 2003, Letter Agreement executed by Mark Gorman for Abbott and ZonePerfect and by Paul Schacher for Sweet, attached hereto as Exhibit B.

21.     "This litigation" shall mean the action filed by David Friedson, as Stockholders' Representative of the former Stockholders of the ZonePerfect Nutrition Company against Abbott Laboratories, et. al., currently pending in the United States District Court, District of Delaware, Case No. 06 CV 00382-GMS.

### DOCUMENTS TO BE PRODUCED

1.     All Documents constituting or relating to Sweet's analysis of the economics benefit of manufacturing the Products.

2.     All Documents and Communications regarding negotiations with ZonePerfect representatives, including but not limited to Christopher Baker, which resulted in the August Letter Agreement.

3.     All Documents and Communications regarding Sweet's analysis of the terms of the August Letter Agreement.

4.     All Documents and Communications regarding Sweet's decision to withdraw from or retract the August Letter Agreement.

5.     All Documents and Communications regarding any request by Abbott that Sweet prepare a letter retracting or withdrawing from the August Letter Agreement.

6.     All Documents and Communications between and among Sweet, ZonePerfect and Abbott regarding the terms of the August Letter Agreement, or any draft thereof.

7. All Documents and Communications with Abbott, which resulted in the October Letter Agreement.

8. All Documents and Communications between and among Sweet's officers, agents and employees regarding the terms of the August Letter Agreement, or any draft thereof.

9. All Documents and Communications between and among Sweet, Abbott and ZonePerfect regarding the "new specifications" for some or all of the Bars attached as Exhibit B to the August Letter Agreement.

10. All Documents and Communications between and among Abbott and/or The Pascarella Law Firm regarding the "new specifications" for some or all of the Bars attached as Exhibit B to the August Letter Agreement.

11. All Documents and Communications between and among Sweet and Abbott regarding the renegotiation of any one or more of the terms of the August Letter Agreement including, without limitation, those Documents produced and those Communications made during the period from August 25, 2003 through to and including September 30, 2003.

12. All Documents and Communications between and among Abbott, ZonePerfect and The Pascarella Law Firm regarding the renegotiation of any one or more of the terms in the August Letter Agreement including, without limitation, those Documents produced and those Communications made during the period from August 25, 2003 through to and including September 30, 2003.

13. All Documents and Communications regarding the negotiation and preparation of the September 23 Abbott Redraft.

14.    All Documents and Communications between and among Sweet's officers, agents and employees regarding the terms of the September 23 Abbott Redraft, or any draft thereof.

15.    All Documents and Communications regarding any offer by Abbott or any Abbott personnel to make any payment or to provide any benefit or other consideration including, without limitation, any revision to the terms of the August Letter Agreement, to Sweet or any Sweet personnel in exchange for Sweet or any Sweet personnel rejecting or otherwise withdrawing from the August Letter Agreement or in exchange for sending the September 30 Letter to Abbott.

16.    All Documents and Communications regarding the scheduling of and agenda for the September 24, 2003 meeting between personnel of Abbott and personnel of Sweet including, without limitation, all Documents and Communications regarding the date or dates on which flight, hotel, and rental car accommodations were reserved and purchased so that such personnel could attend such meeting.

17.    All Documents and Communications regarding the substance of the discussions at the aforesaid September 24, 2003 meeting.

18.    All Documents and Communications regarding Sweet's decision to retract the pricing offer stated in the August Letter Agreement.

19.    All Documents and Communications regarding the discounts that Sweet attempted to, or did obtain, from its suppliers as referenced in the September 30 Letter.

20.    All Documents and Communications regarding the preparation of the September 30 Letter.

743576_1                                      6

21.    All Documents and Communications regarding Sweet's analysis of the terms of the September 30 Letter.

22.    All Documents and Communications between and among Sweet, Abbott and ZonePerfect regarding manufacturing the Bars.

23. .    All Documents and Communications between and among Abbott, The Pascarella Law Firm and ZonePerfect regarding manufacturing the Bars.

24.    All Documents and Communications between and among Sweet, Abbott and ZonePerfect regarding the quality assurance demanded by Abbott in the manufacture of the Bars and Other Product.

25.    All Documents and Communications between and among Abbott, The Pascarella Law Firm and ZonePerfect regarding the quality assurance demanded by Abbott in the manufacture of the Bars and Other Product.

26.    All Documents and Communications between and among The Pascarella Law Firm and ZonePerfect regarding the quality assurance demanded by ZonePerfect in the manufacturer of the Bars and Other Product.

27.    The Manufacturing Agreement and any proposed and actual amendments to the Manufacturing Agreement, including the October Letter Agreement from the time it was executed until it expired.

28.    Any Document constituting, relating to or regarding operating manuals used by Sweet to manufacture the Bars or Other Product.

29.    Any Document constituting, relating to or regarding the quality control used by Sweet for manufacturing the Bars or Other Product.

30.    All Document constituting, relating to or regarding records of the production runs for the Bars or Other Product in terms of units from calendar year 2001 to the present.

31.    All reports or Document which show the number of production runs performed each day of production for the Bars for the years 2002 to 2005.

32.    All reports or other Document showing Sweet's cost in terms of unit price of each of the Bars for each year Sweet manufactured them.

33.    All audited and unaudited financial statements for Sweet for the years 2001, 2002, 2003, 2004 and 2005.

34.    All Documents and Communications between and among Paul Schacher, Joe Pizzo or anyone else at Sweet and ZonePerfect regarding the accuracy of the labels and advertising placed on the Bars by Sweet or used in connection with the marketing of the Bars or Other Product.

35.    All Documents and Communications between and among The Pascarella Law Firm and ZonePerfect regarding the accuracy of the labels and advertising placed on the Bars by Sweet or used in connection with the marketing of the Bars or Other Product.

36.    All Documents and Communications between and among Paul Schacher, Joe Pizzo or anyone else at Sweet and Abbott regarding the accuracy of the labels and advertising placed on the Bars by Sweet or used in connection with the marketing of the Bars or any Other Product.

37.    All Documents and Communications between and among The Pascarella Law Firm and Abbott regarding the accuracy of the labels and advertising placed on the Bars by Sweet or used in connection with the marketing of the Bars or any Other Product.

743576_1                                                    8

38.     All Documents and Communications between and among Sweet, ZonePerfect and Abbott regarding changes to the composition or to the formula used in the manufacture of Bars.

39.     All Documents and Communications between and among The Pascarella Law Firm, ZonePerfect and Abbott regarding changes to the composition or to the formula used in the manufacture of Bars.

40.     All Documents and Communications regarding manufacturing costs associated with changes to the composition or formula used to manufacture the Bars or Other Product.

41.     All Documents and Communications regarding manufacturing costs associated with any changes to the composition or formula used to manufacture the Bars or Other Product.

42.     All Documents and Communications regarding manufacturing costs associated with any changes to the composition or formula used to manufacture the Bars or Other Product.

43.     All Documents and Communications between and among The Pascarella Law Firm, Abbott and ZonePerfect regarding manufacturing costs associated with any changes to the composition or formula used to manufacture the Bars or Other Product.

44.     All Documents evidencing, constituting or relating to Sweet's analysis (financial or otherwise) of any production changes requested by Abbott.

45.     All Document evidencing, constituting or relating to any changes requested by Abbott to the tolerance levels for the manufacture of the Bars or Other Product.

46. All Document evidencing, constituting or relating to Sweet's analysis of the changes to the composition or formula or tolerance levels used to manufacture the Bars or Other Product.

47. All Documents and Communications regarding the "Ross Interim Operating Procedures" and "Ross Quality Assurance Procedures".

48. All Documents and Communications regarding any manufacturing instructions issued by Abbott to Sweet.

49. All Documents and Communications, including minutes and notes of any meeting between and among Sweet, Robert Joseph of Ross, or any other Person from Abbott regarding Sweet's production of the Bars or Other Product.

50. All Documents and Communications, including minutes and notes of any meeting between and among The Pascarella Law Firm, Robert Joseph of Ross, or any other Person from Abbott regarding Sweet's production of the Bars or Other Product.

51. All Documents and Communications, including notes of any meetings between and among Sweet, Robert Joseph of Ross, or any other Person from Abbott, regarding National Labeling and Education Act ("NLEA") compliance.

52. All Documents and Communications, including notes of any meetings between and among The Pascarella Law Firm, Robert Joseph of Ross, or any other Person from Abbott, regarding National Labeling and Education Act ("NLEA") compliance.

53. All Documents and Communications between and among Sweet, Abbott and ZonePerfect regarding compliance with the NLEA.

54. All Documents and Communications between and among The Pascarella Law Firm, Abbott and ZonePerfect regarding compliance with the NLEA.

55. All Documents and Communications between and among Schacher, and anyone else at Sweet, regarding the Bars or Other Product and whether they were to be manufactured to FDA Class I Nutrient Standards, or Class II Nutrient Standards, as those terms are used in FDA Regulations and Guidance for Industry, FDA Nutrition Labeling Manual (hereinafter "Class I Nutritional Standards or Class II Nutritional Standards").

56. All Documents and Communications between and among The Pascarella Law Firm, and ZonePerfect, regarding the Bars or Other Product and whether they were to be manufactured to FDA Class I Nutrient Standards, or Class II Nutrient Standards, as those terms are used in FDA Regulations and Guidance for Industry, FDA Nutrition Labeling Manual (hereinafter "Class I Nutritional Standards or Class II Nutritional Standards").

57. All Documents and Communications between and among Sweet and ZonePerfect regarding whether the Bars or Other Products were to be manufactured at FDA Class I Nutritional Standards, Class II Nutritional Standards, or any other standard.

58. All Documents and Communications between and among Sweet and Abbott regarding whether the Bars or Other Products were to be manufactured at Class I Nutritional Standards or Class II Nutritional Standards, or any other standard.

59. All Documents and Communications between and among The Pascarella Law Firm and Abbott regarding whether the Bars or Other Products were to be manufactured at Class I Nutritional Standards or Class II Nutritional Standards, or any other standard.

60.      Any Documents evidencing, constituting or regarding the profitability to
Sweet of manufacturing the Bars or Other Product at the Class I Nutritional Standards or
Class II Nutritional Standards.

61.      Any Documents evidencing, constituting or regarding a comparison in
profitability to Sweet of manufacturing at different Nutritional Standards.

62.      Any Documents evidencing, constituting, or regarding a comparison in the
profitability to Sweet of manufacturing the Bars at different tolerance levels.

63.      All Documents and Communications between and among Sweet and
anyone at Abbott concerning the "new specifications" which were to become effective on
November 22, 2002, as set forth in the October 30 Letter Agreement.

64.      All Documents and Communications between and among The Pascarella
Law Firm and Abbott concerning the "new specifications" which were to become
effective on November 22, 2002 as set forth in the October 30 Letter Agreement.

65.      All Documents and Communications regarding any projected or actual
increases in Sweet's unit price cost to produce the Bars as a result of the new
specifications and their inclusion in the Basic Price as described in the October Letter
Agreement.

66.      All Documents and Communications between and among Sweet and
Abbott regarding any projected or actual increases in Sweet's cost to produce the Bars as
a result of the new specifications and their inclusion in the Basic Price as described in the
October Letter Agreement.

67.      All Documents and Communications between and among The Pascarella
Law Firm and Abbott regarding any projected or actual increases in Sweet's cost to

produce the Bars as a result of the new specifications and their inclusion in the Basic Price as described in the October Letter Agreement.

68.     All Documents and Communications between Sweet and any of Sweet's suppliers regarding volume discounts on raw ingredients sought by Sweet during July, August and September, 2003.

69.     All Documents and Communications showing the list of suppliers and vendors contacted by Sweet for a volume discount, and mentioned in the September 30 Letter from Schacher to Ned R. McCoy, Director of Business Development for Ross Products Division at Abbott.

70.     All Documents and Communications evidencing or constituting the intense review of Sweet's cost structure as referred to in the September 30 Letter.

71.     All Documents and Communications showing, evidencing or constituting the negotiations with Sweet's vendors as set forth in the September 30 Letter.

72.     All Documents and Communications showing, evidencing or relating to any changes in the class of Bars which were being produced by Sweet.

73.     Any and all Documents and Communications showing changes in the production standards from Class One to Class Two, or vice versa.

74.     All Documents and Communications evidencing, constituting or relating to any tolerance studies or studies performed by Sweet regarding its manufacture of the Bars or Other Product for the years 2002, 2003, 2004 and 2005.

75.     All Documents and Communications between and among Schacher, and anyone else at Sweet and Abbott, regarding Sweet's willingness to enter into a joint venture or sell its business to Abbott.

76.    All Documents and Communications between and among The Pascarella Law Firm and Abbott, regarding Sweet's willingness to enter into a joint venture or sell its business to Abbott.

77.    All Documents and Communications regarding or relating to inquiries of or offers by Sweet or Abbott to purchase Sweet or Sweet's production capabilities.

78.    All Documents and Communications between and among Sweet and Abbott regarding the possibility of extending the terms of the October Letter Agreement.

79.    All Documents and Communications between and among The Pascarella Law Firm, PLLC, and Abbott regarding the possibility of extending the terms of the October Letter Agreement.

80.    All Documents and Communications between and among Dechert and any of its attorneys, and Sweet regarding ZonePerfect, the Purchase Agreement, the August Letter Agreement, the September 23 Abbott Redraft, the September 30 Letter and/or the October 30 Letter Agreement.

81.    All Documents and Communications between and among The Pascarella Law Firm and any of its attorneys, regarding Sweet, ZonePerfect, the Purchase Agreement, the August Letter Agreement, the September 23 Abbott Redraft, the September 30 Letter and/or the October 30 Letter Agreement.

82.    All Documents and Communications between Sweet, Abbott and ZonePerfect regarding the possibility of Sweet continuing as a manufacturer of the Bars or Other Product.

743576_1                                                            14

83.     All Documents and Communications between The Pascarella Law Firm, Abbott and ZonePerfect regarding the possibility of Sweet continuing as a manufacturer of the Bars or Other Product.

84.     All Documents and Communications concerning consent decrees, orders or judgments entered into by Abbot or Ross in connection with the manufacture, production, labeling, or sale of any food products.

85.     All Documents and Communications concerning industry-wide consent decrees, orders or judgments concerning the manufacture, labeling, or sale of any food products.

86.     All Documents and Communications between and among Sweet, its officers, directors, employees and any officers, directors, and employees of Adams, Harkness & Hill, including but not limited to David Thibodeau, regarding Abbott's purchase of ZonePerfect, the August Letter Agreement, the September 23 Abbott Redraft, the September 30 Letter and/or the October 30 Letter Agreement.

87.     All Documents evidencing, constituting or regarding Sweets' output and production records in cost units for the Bars and Other Product during the years 2002, 2003, 2004 and 2005.

88.     All Documents and Communications regarding communications with representatives of ZonePerfect concerning Abbott's purchase of ZonePerfect, the August Letter Agreement, the September 23 Abbott Redraft, the September 30 Letter and/or the October 30 Letter Agreement.

743576_1                                                15

EXHIBIT A

BY: SWEET#PRODUCTIONS;    163184206055;    SEP-30-03  3:25PM;    PAGE 2

# SWEET PRODUCTIONS LTD.

DEFINING THE SCIENCE OF NUTRITION"

5100 New Horizons Boulevard · Amityville, New York 11701
Tel: 631-842-0548 · Fax: 631-842-0805 · Toll Free: 800-805-8575
e-mail: sweetsltd@ool.com

Ned R. McCoy                                September 30, 2003
Director, Business Development
Ross Products Division
Abbott Laboratories
625 Cleveland Avenue
Columbus, OH 43215-1724

VIA FAX: (614) 624-7313

RE: Sweet Productions / ZonePerfect Contract

Dear Ned:

This letter serves as notice that I am retracting our offer for the pricing stated on the
Sweet Productions / ZonePerfect contract dated August 25, 2003 and signed by me on
August 26, 2003.

There are several reasons for our inability to enter a contract at the prices set forth in the
August 25th contract. First, we assumed that we would be able to negotiate greater
discounts from suppliers during September with the promise of increased volumes in the
coming year. However, discounts on raw ingredient volumes greater than we already
have negotiated for this year's 90,000,000 production levels were minimal.

The pricing set forth in the August 25, 2003 contract makes it impossible for Sweet
Productions to generate any profit on some products, negligible profit on others and some
at a loss. It is impossible for us to dedicate more production to ZonePerfect products
without having minimal profitability on the product lines.

After an intense review of our cost structure, negotiations with our vendors, and
including anticipated cost cutting and production improvements in the coming year, we
have been able to create a weighted average reduction from the original contract price of
$0.0125. The attached table indicates the prices that we are able to offer by product.

This should enable us to finalize a contract. I look forward to working with you.

Very truly yours,

Paul Schacher

enclosure

SWEET#PRODUCTIONS;          16316420805];        SEP-30-03  3:34PM;        PAGE  3/3

ZonePerfect Nutrition Bar Flavor Unit Analysis - Sweet Productions
July 1, 2002-Jun-30,2003

| Product Name | % of ZPN Units | SP Price at 90 MM units | | | |
|---|---|---|---|---|---|
| | | Old | New | Difference | DIF x % |
| 01063 CHOCOLATE PEANUT BUTTER BAR | 28.40% | 0.4288 | 0.4068 | 0.022 | 0.0063 |
| 01061 FUDGE GRAHAM BAR | 25.10% | 0.4188 | 0.3938 | 0.025 | 0.0063 |
| 01004 STRAWBERRY YOGURT BAR | 12.10% | 0.4088 | 0.3988 | 0.010 | 0.0012 |
| 01035 CHOCOLATE MINT | 13.10% | 0.3736 | 0.3486 | 0.025 | 0.0033 |
| 01104 CHOCOLATE RASPBERRY BAR | 5.80% | 0.4085 | 0.3985 | 0.010 | 0.0006 |
| 01005 APPLE CINNAMON CRUNCH BAR | 5.90% | 0.3786 | 0.3536 | 0.025 | 0.0015 |
| 01036 LEMON YOGURT | 6.90% | 0.3988 | 0.3688 | 0.030 | 0.0021 |
| 01062 BLUEBERRY YOGURT BAR | 3.70% | 0.4236 | 0.3886 | 0.035 | 0.0013 |
| 01129 CHOCOLATE VANILLA CREME BAR | 0.00% | | | | |
| 01128 CHOCOLATE CARAMEL CLUSTER BAR | 0.00% | | | | |
| 01127 DOUBLE CHOCOLATE BAR | 0.00% | | | | |
| 01001 HONEY PEANUT BAR | 0.20% | | | | |
| 01126 CARAMEL APPLE BAR | 0.00% | | | | |
| 01125 PEACH YOGURT BAR | 1.00% | 0.4886 | 0.4536 | 0.035 | 0.0004 |
| Total Bar Gross Sales | 100.00% | | | | 0.0223 |

| | | Weighted Average | 0.0223 |
|---|---|---|---|
| | | Percentage of .025 | 89.3% |

SP REVISED - 9/30/03

| Product Name | % of ZPN Units | SP Price at 90 MM units | | | |
|---|---|---|---|---|---|
| | | Old | New | Difference | DIF x % |
| 01063 CHOCOLATE PEANUT BUTTER BAR | 28.40% | 0.4288 | 0.4220 | 0.007 | 0.0017 |
| 01061 FUDGE GRAHAM BAR | 25.10% | 0.4188 | 0.4022 | 0.016 | 0.0041 |
| 01004 STRAWBERRY YOGURT BAR | 12.10% | 0.4088 | 0.4075 | 0.001 | 0.0001 |
| 01035 CHOCOLATE MINT | 13.10% | 0.3736 | 0.3500 | 0.024 | 0.0031 |
| 01104 CHOCOLATE RASPBERRY BAR | 5.80% | 0.4086 | 0.4025 | 0.006 | 0.0003 |
| 01005 APPLE CINNAMON CRUNCH BAR | 5.90% | 0.3786 | 0.3725 | 0.006 | 0.0004 |
| 01036 LEMON YOGURT | 6.90% | 0.3988 | 0.3800 | 0.018 | 0.0013 |
| 01062 BLUEBERRY YOGURT BAR | 3.70% | 0.4236 | 0.3925 | 0.031 | 0.0012 |
| 01129 CHOCOLATE VANILLA CREME BAR | 0.00% | | | | |
| 01128 CHOCOLATE CARAMEL CLUSTER BAR | 0.00% | | | | |
| 01127 DOUBLE CHOCOLATE BAR | 0.00% | | | | |
| 01001 HONEY PEANUT BAR | 0.20% | | | | |
| 01126 CARAMEL APPLE BAR | 0.00% | | | | |
| 01125 PEACH YOGURT BAR | 1.00% | 0.4886 | 0.4575 | 0.031 | 0.0003 |
| Total Bar Gross Sales | 100.00% | | | | 0.0125 |

| | | Weighted Average | 0.0125 |
|---|---|---|---|
| | | Percentage of .025 | 50.1% |

EXHIBIT B



ROSS PRODUCTS DIVISION OF
ABBOTT LABORATORIES

625 CLEVELAND AVENUE · COLUMBUS, OHIO 43215-1724

October 30, 2003

Mr. Paul Schacher
President
Sweet Productions Limited
5100 New Horizon Boulevard
Amityville, New York 11701

Dear Paul:

As you know, ZonePerfect Corporation ("ZonePerfect") and Sweet Productions Limited ("Sweet Productions") are parties to an Agreement, dated November 27, 2001 (the "Original Agreement"), which we subsequently extended and amended pursuant to a letter agreement dated October 30, 2002 (the "2002 Amendment" and together with the Original Agreement, the "Agreement"). As we have discussed, the parties would like to further extend and amend the Agreement on the following terms and conditions:

1.    The parties agree to further extend the Term of the Agreement through September 30, 2005.

2.    Effective as of and retroactive to October 1, 2003, Price E of Exhibit B-1 of the Agreement shall be amended and restated as follows:

| PRODUCT | PRICE (E) |
|---|---|
| | 90,000,000 |
| CHOCOLATE RASPBERRY | 0.4025 |
| STRAWBERRY YOGURT | 0.4075 |
| CHOCOLATE MINT | 0.3500 |
| APPLE CINNAMON | 0.3725 |
| LEMON YOGURT | 0.3800 |
| CHOCOLATE PEANUT-BUTTER | 0.4220 |
| BLUEBERRY YOGURT | 0.3925 |
| PEACH YOGURT | 0.4575 |
| FUDGE GRAHAM | 0.4022 |

Page 2

3.    The parties acknowledge that pursuant to Section 2(b) of the Agreement, ZonePerfect is herewith providing Sweet Productions with new Specifications for some or all of the Products, which new Specifications are attached as Exhibit A to this letter agreement. These new Specifications shall be effective as of November 22, 2003. The parties acknowledge and agree that any changes in the cost of the Products as a result of the new Specifications are reflected in the new Basic Price specified above and that no increase or decrease in such Basic Price as provided for in Section 11(b) of the Agreement shall occur.

4.    The Basic Price for each Product set forth in the relevant columns on Exhibit B-1, as amended pursuant hereto, shall apply from October 1, 2003 through September 30, 2005 (the "Remaining Term").

5.    Sweet Productions hereby represents, warrants and covenants to ZonePerfect that it has and will continue to have the capacity to produce an aggregate minimum of ninety million (90,000,000) units of Products per year on an annualized basis during the Remaining Term and 7,500,000 units of Products per month during the Remaining Term, and 10,000,000 units of Products per month when needed (including, without limitation, capacity to produce at least 9,000,000 units of Products for October 2003 and 10,000,000 units per month for each of November and December 2003).

6.    ZonePerfect shall, prior to the 20th of each month, give a rolling forecast for the next consecutive 12-month period to Sweet Productions. On or before December 20, 2003, a firm order will be issued by ZonePerfect for the first two months. Future purchase orders placed for months 3 and 4 shall be no less than 85% of the rolling forecast, in each calendar month for total units. Future purchase orders placed for months 5 and 6 shall be no less than 75% of the rolling forecast, in each calendar month for total units. If future orders placed do not meet or exceed 75% of the rolling forecast for either months 5 or 6, Sweet Productions will invoice ZonePerfect in the amount of $0.0125 per bar, as sole remedy, on the Shortfall during such month. Shortfall will be defined as 75% of the rolling forecast minus the number of units actually ordered in that month. Provided, however, that nothing contained in this paragraph supersedes the annual pricing determinations in paragraphs 7 and 8.

7.    The following is for the period from October 1, 2003 through September 30, 2004:

(a)    Beginning on October 1, 2003, the Basic Price for each Product for the Remaining Term shall commence at the level for an aggregate total of Ninety Million (90,000,000) units as set forth in column "Price (E)" in the Exhibit B-1 attached to the 2002 Amendment, as amended pursuant to this letter amendment.

(b)    In the event that from October 1, 2003 through September 30, 2004 (the "2004 Term"), the aggregate total of all units of Products requested pursuant to a valid purchase order for units to be delivered during the 2004 Term in accordance with the Agreement ( a "2004 Purchase Order") does not equal or exceed 90 million units, the Basic Price for all units of Products purchased during the 2004 Term shall be recalculated retroactively to match the pricing set forth in the columns "Price (A)", "Price (B)", "Price (C)" or "Price (D)" depending on the aggregate of total of all units of Products actually ordered pursuant to 2004 Purchase Orders during the 2004 Term. Thus, if the aggregate total of all units of Products ordered pursuant to 2004 Purchase Orders during the 2004 Term (i) does not equal or exceed 55 million units, the prices shall be those set forth in column "Price (A)"; (ii) equals or exceeds 55 million units but does not equal or exceed 64 million units, the prices shall be those set forth in column "Price (B)"; and (iii) equals or exceeds 64 million units but does not equal or exceed 75 million units, the prices shall be those set forth in column "Price (C)"; and (iv) equals or exceeds 75 million units but does not equal or exceed 90 million units, the prices shall be those set forth in column "Price (D)". In such event, Buyer shall pay the difference in price for all units previously purchased during the 2004 Term within thirty (30) days after receiving an invoice from Seller showing in reasonable detail the basis for such

Page 3

recalculated prices. Further, the parties agree that such event does not constitute a breach of the Agreement by ZonePerfect and that the cure period of paragraph 18(a) of the Original Agreement shall not apply to this event.

8.      The following is for the period from October 1, 2004 through September 30, 2005:

(a)      Beginning on October 1, 2004, the Basic Price for each Product for the Remaining Term shall commence at the level for an aggregate total of Ninety Million (90,000,000) units as set forth in column "Price (E)" in the Exhibit B-1 attached to the 2002 Amendment, as amended pursuant to this letter amendment.

(b)      In the event that from October 1, 2004 through September 30, 2005 (the "2005 Term"), the aggregate total of all units of Products requested pursuant to a valid purchase order for units to be delivered during the 2004 Term in accordance with the Agreement ( a "2005 Purchase Order") does not equal or exceed 90 million units, the Basic Price for all units of Products purchased during the 2005 Term shall be recalculated retroactively to match the pricing set forth in the columns "Price (A)", "Price (B)", "Price (C)" or "Price (D)" depending on the aggregate of total of all units of Products actually ordered pursuant to 2005 Purchase Orders during the 2005 Term. Thus, if the aggregate total of all units of Products ordered pursuant to 2005 Purchase Orders during the 2005 Term (i) does not equal or exceed 55 million units, the prices shall be those set forth in column "Price (A)"; (ii) equals or exceeds 55 million units but does not equal or exceed 64 million units, the prices shall be those set forth in column "Price (B)"; and (iii) equals or exceeds 64 million units but does not equal or exceed 75 million units, the prices shall be those set forth in column "Price (C)"; and (iv) equals or exceeds 75 million units but does not equal or exceed 90 million units, the prices shall be those set forth in column "Price (D)". In such event, Buyer shall pay the difference in price for all units previously purchased during the 2005 Term within thirty (30) days after receiving an invoice from Seller showing in reasonable detail the basis for such recalculated prices. Further, the parties agree that such event does not constitute a breach of the Agreement by ZonePerfect and that the cure period of paragraph 18(a) of the Original Agreement shall not apply to this event.

9.      Notwithstanding anything set forth in the Original Agreement or the amendments thereto, even in the event that, in the course of such Term(s), purchases for the 2004 Term and/or the 2005 Term may be projected as or perceived to be falling below the aggregate minimum requirement of 90,000,000 units of Products, the combined purchase orders for product to be delivered during the last two months of either of the said Terms shall not exceed greater of 20,000,000 units or 25% of all units of Products requested pursuant to valid purchase orders for units to be delivered during the first ten months of such Term in question, in accordance with the Agreement, on an annual basis.

10.      Except as expressly amended hereby, the terms and conditions of the Agreement and the 2002 Amendment shall remain in full force and effect.

11.      During the 2005 Term the parties shall discuss at least 180 days prior to the end of the Term whether or not ZonePerfect intends to renew the contract for additional Terms.

12.      During the Remaining Term, so long as ZonePerfect maintains a purchasing pattern consistent with achieving an aggregate minimum of ninety million (90,000,000) units to be delivered per year on an annualized basis, Sweet Productions will produce 40:30:30 (ratio of calories from carbohydrate, protein and fat) single layer crispy bars for only ZonePerfect.

Page 4

Please indicate that this amendment confirms our agreement by countersigning and dating this letter where indicated below and returning a copy to me.

Sincerely yours,

ZonePerfect Nutrition Company

Name: Paul Schacher
Title: President & CEO

Acknowledged and agreed for
Sweet Productions Limited:

Paul Schacher
President

Name: MARK GORMAN
Title: V.P. & GM Medical Nutritionals

Acknowledged and agreed for
Ross Products Division of Abbott Laboratories

Page 5

EXHIBIT A

NEW SPECIFICATIONS

### 210 CALORIE BAR

|  | PROTEIN | FAT | CHO | TOTAL |
|---|---|---|---|---|
| GRAMS | 16 | 7 | 21 | |
| CALORIES | 64 | 63 | 84 | 211 |
| % CALS | 30.33% | 29.86% | 39.81% | |
| MIN SPEC | 15.5 | 6.5 | 20.5 | |
| MIN CALS | 62 | 58.5 | 82 | |
| % CALS | 29.38% | 27.73% | 38.89% | |
| MAX SPEC. | 18.5 | 7.5 | 23.7 | |
| MAX CALS | 74 | 67.5 | 94.8 | |
| % CALS | 35.07% | 31.99% | 44.93% | |
| TARGET (GMS) | 16.1 | 7 | 21 | |

### 200 CALORIE BAR

|  | PROTEIN | FAT | CHO | TOTAL |
|---|---|---|---|---|
| GRAMS | 15 | 7 | 19 | |
| CALORIES | 60 | 63 | 76 | 199 |
| % CALS | 30.15% | 31.66% | 38.19% | |
| MIN SPEC | 14.5 | 6.5 | 18.5 | |
| MIN CALS | 58 | 58.5 | 74 | |
| % CALS | 29.15% | 29.40% | 37.19% | |
| MAX SPEC. | 17.4 | 7.5 | 22.4 | |
| MAX CALS | 69.6 | 67.5 | 89.6 | |
| % CALS | 34.97% | 33.92% | 45.03% | |
| TARGET (GMS) | 15.1 | 7 | 19 | |

### 180 CALORIE BAR

|  | PROTEIN | FAT | CHO | TOTAL |
|---|---|---|---|---|
| GRAMS | 14 | 6 | 19 | |
| CALORIES | 56 | 54 | 76 | 186 |
| % CALS | 30.11% | 29.03% | 40.86% | |
| MIN SPEC | 13.5 | 5.5 | 18.5 | |
| MIN CALS | 54 | 49.5 | 74 | |
| % CALS | 29.03% | 26.61% | 39.78% | |
| MAX SPEC. | 16.3 | 6.5 | 21 | |
| MAX CALS | 65.2 | 58.5 | 84 | |
| % CALS | 35.05% | 31.45% | 45.16% | |
| TARGET (GMS) | 14.1 | 6 | 19 | |

QS

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DAVID FRIEDSON, as Stockholders'          )
Representative of the former Stockholders )
of the ZONEPERFECT NUTRITION             )
COMPANY,                                  )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )  CASE NO. 06 CV 00382 GMS
                                          )
ABBOTT LABORATORIES, an Illinois          )
corporation, WELLS FARGO BANK             )
MINNESOTA, a Minnesota corporate trust,.  )
and SWEET PRODUCTIONS LTD., a New         )
York corporation,                         )
                                          )
              Defendants.                 )
                                          )

## WAIVER OF SERVICE OF RULE 45 SUBPOENA

· My client having voluntarily waived formal service, I hereby accept service of the Stockholders' Rule 45 subpoena directed to my client Sweet Productions Ltd. on its behalf.

Date                                    Jim Pascarella, Esq.
                                        The Pascarella Law Firm, PLLC
                                        1551 Franklin Avenue
                                        Mineola, NY 11501

1

716985_1

## AFFIDAVIT OF SERVICE

Index #: _____ 06-CV00382GMS
Date Filed: _____
Court Date: _____ May 21, 2007
Assigned Justice: _____

**UNITED STATES DISTRICT COURT: SOUTHERN DISTRICT.**

**COUNTY**

ATTORNEY(S): :  RUBIN AND RUDMAN LLP   PH: 617.330.7000
ADDRESS: 50 ROWES WHARF BOSTON MA 02110   File No.: FRIEDSON

*DAVID FRIEDSON*

*Plaintiff(s)/Petitioner(s)*

*vs.*
*ABBOTT LABORATORIES*

*Defendant(s)/Respondent(s)*

STATE OF NEW YORK   , COUNTY OF SUFFOLK SS.:
PAUL MARTINEZ _____ , being duly sworn deposes and says: Deponent is not a party herein, is over 18 years
of age and resides in New York State. On   **Wednesday, May 2, 2007**   at   **1:10PM** .
at   **1551 FRANKLIN AVENUE MINEOLA, NY 11501**   .   deponent Served the within

Subpoena In a Civil Case

on: _____ **PASCARELLA LAW FIRM** _____
_____ **Witness** _____ therein named.

The index number and the filing date of the action were endorsed upon the face of the papers so served herein.

**#1 INDIVIDUAL** ☐   By delivering a true copy of each to said recipient personally; deponent knew the person served to be the person described as said person.

**#2 CORPORATION** ☒   By delivering to and leaving with _____ **DONNA 'K.", REFUSED LAST NAME** _____ and that
deponent knew the person so served to be the authorized agent of the corporation, and said person stated that he/she was authorized
to accept service on behalf of the corporation.

**#3 SUITABLE AGE PERSON** ☐   By delivering a true copy of each to _____ a person of suitable age and discretion.
Said premises is recipient's: [ ] actual place of business   [ ] dwelling house (usual place of abode) within the state.

**#4 AFFIXING TO DOOR** ☐   By affixing a true copy of each to the door of said premises, which is recipient's: [ ] actual place of business   [ ] dwelling house
(place of abode) within the state.

Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat
on _____ at _____
on _____ at _____
on _____ at _____
on _____ at _____
Address confirmed by _____

**#5 MAIL COPY** ☐   On _____ , deponent completed service under the last two sections by depositing a true copy of each document to the
above address in a 1st Class postpaid properly addressed envelope not indicating that mailing was from an attorney or concerned legal
action and marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post
Office in the State of New York.

**#7 DESCRIPTION** A description of the Defendant, or other person served, or spoken to on behalf of the Defendant is as follows:
☒   Sex: _Female_   Color of skin: _Yellow_   Color of hair: _Black_   Age: _appx.40_   Height: _approx. 5'3"_
(use with #1, 2 or 3)   Weight: _approx.115_   Other Features: _____

**#8 WIT. FEES** ☐   the authorized witness fee and / or traveling expenses were paid (tendered) to the recipient.

**#9 MILITARYSRVC** ☐   Your deponent asked person spoken to whether the defendant was in the active military service of the United States or N. Y. State and
received a negative reply. Upon information and belief I have; being based on the conversation and observations above narrated, defendant
is not in the military service.

**#10 OTHER** ☐

Sworn to before me on this   3   day of   MAY, 2007

_signature_

DIANNE M. GONZALEZ
NOTARY PUBLIC, State of New York
No. 01GO6025621, Qualified in Nassau County
Term Expires June 01, 2007

PAUL MARTINEZ
Server's Lic # 1218648
InvoiceWorkOrder 0708347

*ONE WORLD JUDICIAL SERVICES, INC. - P.O. BOX 93 - DEER PARK, NY 11729  { 631.667.8260 }*