IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID    FRIEDSON,    as    Stockholders'    )
Representative of the former Stockholders of the  )
ZONE PERFECT NUTRITION COMPANY,    )
    )
        Plaintiff,    )
    )    C.A. No. 06-382 (GMS)
v.    )
    )
ABBOTT    LABORATORIES    and    WELLS    )
FARGO BANK MINNESOTA, in its capacity as    )
Escrow Agent    )

---

**DEFENDANT ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**

**PHILLIPS, GOLDMAN & SPENCE, P.A.**

John C. Phillips Jr. (#110)
Brian E. Farnan (#4089)
1200 N. Broom Street
Wilmington, DE 19806
Tele: (302) 655-4200
Fax: (302) 655-4210

Lawrence R. Desideri (admitted *pro hac vice*)
Stephanie S. McCallum (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tele: (312) 558-5600
Fax: (312) 558-5700

*Attorneys for Defendant Abbott Laboratories*

Dated: August 24, 2007

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **I.** | **PRELIMINARY STATEMENT** | **1** |
| **II.** | **ARGUMENT** | **2** |
| | **A.** Abbott's Contract Claim Would Not Only Withstand A Motion To Dismiss, It Is Appropriate For Summary Judgment Without Discovery | **2** |
| | **B.** The Liberal Amendment Standard Of Rule 15 Cannot Be Ignored | **4** |
| | **C.** Good Cause Exists To Permit The Amendment Pursuant To Rule 16 | **5** |
| **III.** | **CONCLUSION** | **6** |

## TABLE OF AUTHORITIES

**Case**                                                                                              **Page**

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000)                                                              4

*Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003)                             5

*Hughes v. McMenamon*, 204 F. Supp. 2d 178 (D. Mass. 2002)                                                 3

*Keene v. Sears Roebuck & Co., Inc.*, No. 05-828, 2007 WL 77324
    (D.N.J. Jan. 8, 2007)                                                             5

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988)                                                             4

*LaSilvia v. United Dairymen of Arizona*, 804 F.2d 1113 (9th Cir. 1986)                                    4

*New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20 (4th Cir. 1963)                                        4

*Novak v. National Broadcasting Co.*, 724 F. Supp. 141 (S.D.N.Y. 1989)                                     4

*Talecris v. Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, No. 05-349-GMS,
    2007 WL 1670387 (D. Del. June 7, 2007)                                             5


**Federal Rules and Other Authorities**

**Fed. R. Civ. P. 15**                                                                                 *passim*

**Fed. R. Civ. P. 16**                                                                                 *passim*

**Moore's Federal Practice § 15.14**                                                                       4

## I.    PRELIMINARY STATEMENT

Using a series of factual misrepresentations and an overly restrictive standard, plaintiff Friedson improperly opposes Abbott's motion to amend the pleadings pursuant to Federal Rule of Civil Procedure 15.  Friedson's rendition of the facts leading up to the amendment and his analysis of how this Court should evaluate this issue are seriously flawed.  Moreover, the interests of judicial economy favor the granting of this amendment.  As a result, Abbott's motion for leave should be granted.

Simply put, the contract at issue states plainly and unambiguously that this action should have been brought in Delaware.  Yet, Friedson chose to disregard the parties' agreement on an exclusive forum and brought this action in Massachusetts.  The Massachusetts court enforced the contract and transferred the case to Delaware.  These are all the facts that are necessary for adjudication of the claim that Abbott seeks to add to this litigation—and no additional discovery is necessary except for the amount of Abbott's legal fees incurred in enforcing the contract's forum selection clause.

Friedson, however, incorrectly seems to assert that he somehow <u>consented</u> to the transfer and that it was not Abbott that moved the court for the transfer.  Friedson is absolutely wrong.  It was because of Abbott's efforts that this action was moved—over Friedson's objection.  Because Friedson was required to bring this action in Delaware to begin with, Friedson should have to pay for Abbott's efforts to obtain its contractually bargained forum.

Utilizing the liberal amendment standard of Rule 15, it makes sense for this Court to allow Abbott to amend to add this claim.  Moreover, even under Rule 16, the Court should allow the amendment because failing to do so would result is a waste of judicial resources.

1

## II.    ARGUMENT

### A.    Abbott's Contract Claim Would Not Only Withstand a Motion to Dismiss, It Is Appropriate for Summary Judgment Without Discovery.

Friedson claims that Abbott should not be able to amend because its claim would not withstand a motion to dismiss. Friedson is seriously misleading this Court. Friedson clearly breached a contractual provision that required that this action "shall be brought in Delaware." (Stock Purchase Agreement Among ZonePerfect, Abbott, and the Shareholders of ZonePerfect [hereinafter "SPA"], Art. 7.9, attached hereto as Exhibit A.) The contract also states that "[w]ith respect to any action or claim arising out of or relating to this Agreement or the transactions contemplated hereby, the parties hereto hereby expressly and irrevocably (i) agree and consent to be subject to the **exclusive** jurisdiction of the United States District Court located in Wilmington, Delaware . . . ." (*Id.*) (emphasis added).

Yet, despite this clear directive from the Stock Purchase Agreement, Friedson brought this action in state court in Massachusetts, citing another agreement between the parties which has nothing to do with this dispute. (Pl's Opp. at 5.) The Massachusetts Court completely disagreed with Friedson finding that "[t]he operative agreement is the Stock Purchase Agreement" and "[i]t has a Forum Selection Clause that says the District Court in Delaware." (Remand Hr'g Tr. at 20, June 7, 2006, attached hereto as Exhibit B.) Indeed, Friedson wanted this case to remain in Massachusetts, so much so that it fraudulently joined another party to prevent removal, a party the Massachusetts Court dismissed finding that the party was joined to "destroy diversity." (*Id.*) As a result, to get its contractually negotiated forum, Abbott was forced to expend significant resources to get this action moved to Delaware, including removal and a motion to dismiss.

In an effort to disguise the impropriety of his Massachusetts filing, Friedson makes several futile arguments that have no bearing on this Court's analysis. (Pl's Opp. at 14-15). First, Friedson tries to convince this Court that because Abbott ultimately was able to move the case moved to Delaware there is no claim. Friedson ignores the fact that Abbott was injured when it was forced to expend resources to correct Friedson's breach of contract. Second, Friedson's contention that this is a "remote" issue that is not relevant to this litigation is meritless. Each and every claim in this litigation is about the breach of a Stock Purchase Agreement, including Abbott's amended claim. Accordingly, there is nothing remote about Abbott's desire to litigate every breach of the same agreement with the same party in the same litigation, rather than in separate litigation.

Last, Friedson claims because Abbott initially utilized a different procedural mechanism (dismissal instead of transfer) to get this case to Delaware than the Court ultimately used, that Abbott is not entitled to relief. This red herring argument should be ignored as it does not change the fact that the action should have been brought in Delaware in the first place. Abbott had to move to dismiss because Massachusetts is in the First Circuit. "[A] motion seeking dismissal of an action for failure to comply with a forum selection clause is considered a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." *Hughes v. McMenamon*, 204 F. Supp. 2d 178, 181 (D. Mass. 2002). If Abbott were in a different circuit, it would have moved to transfer. Indeed, when Judge Zobel asked Abbott whether transfer would be appropriate, Abbott said it would be. (Remand Hr'g Tr. at 18.)

In sum, Abbott's breach of contract claim is well-developed and ripe for summary judgment without any discovery. Accordingly, Abbott should be entitled to assert it in this

litigation—rather than being forced to file a separate lawsuit in the same jurisdiction under the same contract.

###### B.    The Liberal Amendment Standard of Rule 15 Cannot Be Ignored.

Abbott is seeking leave to amend to preserve judicial resources, which is the whole point of Rule 15. Indeed, Rule 15 "is a tool of judicial economy and convenience." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). "Courts should allow amendments liberally when justice requires and in the absence of an apparent or declared reason to deny leave." Moore's Federal Practice § 15.14; *see Alvin v. Suzuki*, 227 F.3d 107, 121-23 (3d Cir. 2000); *see also New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963) ("So useful are [supplemental pleadings] and of such service in the efficient administration of justice that they ought to be allowed as of course . . . ."); *Novak v. National Broadcasting Co.*, 724 F. Supp. 141, 145 (S.D.N.Y. 1989) ("leave to supplement should be freely granted"). This is consistent with Rule 15(d)'s purpose—"to promote as complete an adjudication of the dispute between the parties as is possible." *LaSilvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1119 (9th Cir. 1986).

Here, granting Abbott's motion to leave serves the explicit purpose of Rule 15. If Abbott's motion is not granted, Abbott would be forced to file another lawsuit in Delaware against the shareholders. The Shareholders would need to file new appearances and answer. In contrast, if the amendment is allowed, Abbott will produce its bills and file a motion for summary judgment. Thus, it is much more efficient to amend within the current litigation.

C. **Good Cause Exists To Permit The Amendment Pursuant to Rule 16**

Contrary to the assertions of Friedson, Rules 15 and 16 must be read together in determining whether leave is appropriate. Indeed, "courts 'must consider Fed. R. Civ. P. 16(b)'s requirements that scheduling orders only be modified for 'good cause' *in conjunction with* Rule 15(a)'s directive that leave to amend a complaint be 'freely given.'" *Keene v. Sears Roebuck & Co., Inc.*, No. 05-828, 2007 WL 77324, at *9 (D.N.J. Jan. 8, 2007) (emphasis added); *see also Talecris v. Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, No. 05-349-GMS, 2007 WL 1670387 (D. Del. June 7, 2007) (Sleet, J.) ("courts often evaluate whether a movant has shown good cause by considering the movant's articulated reasons under the Rule 15 standard"). Accordingly, where good cause exists, courts will liberally grant a party's motion for leave to amend its pleadings after the date set by the scheduling order governing deadlines by which to amend the pleadings. *See Alvin v. Suzuki*, 227 F.3d 107, 121-23 (3d Cir. 2000) (holding that "a perceived need for fidelity to the court's prior management plan . . . [was] not among those [reasons] justifying a refusal of leave to amend" and finding good cause existed to allow plaintiff to amend its complaint beyond the scope of the district court's previously entered order setting a narrow scope for amended pleadings); *Talecris*, 2007 WL 1670387 at *1 (Sleet, J.) (holding good cause existed pursuant to Rule 16 to allow defendant to amend its answer after the date set in the scheduling order for amendments to pleadings); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) (finding good cause existed pursuant to Rule 16 to allow defendant to amend its Answer after the date set by the court's case management order).

Rule 15's liberal amendment policies seek to promote judicial economy and convenience. For that reason, and recognizing the juxtaposition of Rule 15 and Rule 16 in evaluating amended pleadings, if granting a motion to amend will promote judicial economy and convenience, then

good cause exists pursuant to Rule 16 to allow a party to amend its pleadings after the date set forth in the scheduling order. As discussed above, if Abbott is not granted its motion to amend its complaint, it will be forced to file another lawsuit in Delaware. Such repetition would result in a waste of judicial resources and work against the promotion of judicial economy. Clearly, then, in an effort to promote judicial economy and prevent judicial waste, good cause exists under Rule 16 to allow Abbott to amend its complaint after the date established for amendments by this Court's scheduling order.

## III.    CONCLUSION

For the foregoing reasons, Abbott requests that its Motion for Leave to File an Amended Answer and Counterclaim be granted.

Dated:  August 24, 2007

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

By:___ /s/ John C. Phillips, Jr._____
John C. Phillips Jr. (#110)
Brian E. Farnan (#4089)
1200 N. Broom Street
Wilmington, DE 19806
Tele: (302) 655-4200
Fax: (302) 655-4210

-and-

Lawrence R. Desideri (admitted *pro hac vice*)
Stephanie S. McCallum (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tele: (312) 558-5600
Fax: (312) 558-5700

**Exhibit A**

EXECUTION COPY

STOCK PURCHASE AGREEMENT

among

ZONEPERFECT NUTRITION COMPANY,

ABBOTT LABORATORIES

and

THE SHAREHOLDERS OF ZONEPERFECT NUTRITION
COMPANY NAMED HEREIN

089737.16 01

Such addresses may be changed from time to time by means of a notice given in the manner provided in this Section (provided that no such notice shall be effective until it is received by the other parties hereto).

7.8.    Fees.    The Shareholders shall pay as of the Closing all fees or commissions which may be payable to Adams, Harkness & Hill, Inc. in connection with this Agreement or the transactions contemplated hereby.

7.9.    Consent to Jurisdiction.    With respect to any action or claim arising out of or relating to this Agreement or the transactions contemplated hereby, the parties hereto hereby expressly and irrevocably (i) agree and consent to be subject to the exclusive jurisdiction of the United States District Court located in Wilmington, Delaware (and in the absence of Federal jurisdiction, the parties consent to be subject to the exclusive jurisdiction of the state courts located in Wilmington, Delaware), (ii) agree not to bring any action related to this Agreement or the transactions contemplated hereby in any other court (except to enforce the judgment of such courts), (iii) agree not to object to venue in such courts or to claim that such forum is inconvenient and (iv) agree that notice or the service of process in any proceeding shall be properly served or delivered if delivered in the manner contemplated by Section 7.7. Final judgment by such courts shall be conclusive and may be enforced in any manner permitted by law.

7.10.    Severability.    If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

7.11.    Interpretation.    All references to immediately available funds or dollar amounts contained in this Agreement shall mean United States dollars. All references to GAAP contained in this Agreement shall mean United States generally accepted accounting principles. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. The parties acknowledge and agree that (i) each party and its counsel have reviewed the terms and provisions of this Agreement and have contributed to its drafting, (ii) the normal rule of construction, to the effect that any ambiguities are resolved against the drafting party, shall not be employed in the interpretation of it, and (iii) the terms and provisions of this Agreement shall be constructed fairly as to all parties hereto and not in favor of or against any party, regardless of which party was generally responsible for the preparation of this Agreement.

7.12.    Waiver.    Waiver of any term or condition of this Agreement by any party shall be effective if in writing and shall not be construed as a waiver of any subsequent breach or failure of the same term or condition, or a waiver of any other term of this Agreement. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

**Exhibit B**



1

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

DAVID FRIEDSON, as Stockholders'          )
Representative of the former              )
Stockholders of the ZONEPERFECT           )
NUTRITIONAL COMPANY,                      )
                                          )
          Plaintiffs,                     )
                                          )
vs.                                       )
                                          )  Civil Action No.
                                          )  06-10057-RWZ
ABBOTT LABORATORIES, an Illinois          )
corporation, WELLS FARGO BANK             )
MINNESOTA, a Minnesota corporate          )
trust, and SWEET PRODUCTIONS LTD.,        )
a New York corporation,                   )
                                          )
          Defendants.                     )

**MOTION TO REMAND**
**MOTION TO DISMISS**

BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE

United States District Court
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
June 7, 2006
2:22 p.m.

\* \* \* \* \*

CATHERINE A. HANDEL, CM
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555

2

```
 1

 2  APPEARANCES:

 3  For the Plaintiffs:
    RUBIN & RUDMAN, LLP
 4  (by Gerald J. Caruso, Esq.)
    50 Rowes Wharf
 5  Boston, MA 02110

 6

 7  For the Defendant Abbott Laboratories:
    DONNELLY, CONROY & GELHAAR, LLP
 8  (by Michael S. D'Orsi, Esq.)
    One Beacon Street
 9  33rd Floor
    Boston, MA 02108
10
    - and -
11
    WINSTON & STRAWN LLP
12  (by Lawrence R. Desideri, Esq.)
    35 West Wacker Drive
13  Chicago, IL 60601-9703

14
    For the Defendant Sweet Productions Ltd.:
15  BURNS & LEVINSON LLP
    (by Jeffrey R. Martin, Esq.)
16  125 Summer Street
    Boston, MA 02110
17
    -and-
18
    THE PASCARELLA LAW FIRM, PLLC
19  (by James A. Pascarella, Esq.)
    1551 Franklin Avenue
20  Mineola, NY 11501

21
    For the Defendant Wells Fargo Bank:
22  EDWARDS ANGELL PALMER & DODGE, LLP
    (by Scott R. Magee, Esq.)
23  111 Huntington Avenue
    Boston, MA 02199
24

25
```

3

```
 1                    P R O C E E D I N G S
 2                (The following proceedings were held in open court
 3        before the Honorable Rya W. Zobel, United States District
 4        Judge, United States District Court, District of Massachusetts,
 5        at the John J. Moakley United States Courthouse, 1 Courthouse
 6        Way, Boston, Massachusetts, on June 7, 2006.)
 7                THE COURT:  Who is here for the plaintiff?
 8                MR. CARUSO:  Your Honor, my name is Gerald Caruso.
 9        I'm here representing the plaintiff.
10                THE COURT:  And for Abbott?
11                MR. DESIDERI:  Lawrence Desideri, your Honor.
12                MR. D'ORSI:  Michael D'Orsi, your Honor.
13                THE COURT:  Also for Abbott?
14                MR. D'ORSI:  Also for Abbott.
15                THE COURT:  Michael D'Orsi, did you say?
16                MR. D'ORSI:  Yes.
17                THE COURT:  And for Wells Fargo?
18                MR. MAGEE:  Scott Magee of Edwards Angell Palmer &
19        Dodge.
20                THE COURT:  And Sweet Productions is not
21        represented?
22                MR. MARTIN:  Your Honor, I apologize.  We are
23        represented.  I'm Jeffrey Martin from Burns & Levinson, local
24        counsel, and Sweet has its counsel from New York here, James
25        Pascarella.
```

```
 1                    THE COURT:  I'm sorry, your last name?

 2                    MR. MARTIN:  Martin, M-a-r-t-i-n, and then

 3        Pascarella, P-a-c-a-r-e-l-l-a.

 4                    THE COURT:  And Mr. Pascarella's first name?

 5                    MR. PASCARELLA:  James.

 6                    THE COURT:  Does the plaintiff seek a ruling in

 7        this lawsuit that the August letter to Sweet -- which was

 8        signed by Sweet, nobody else, binds Sweet?

 9                    MR. CARUSO:  Yes, your Honor, I do seek that

10        ruling.  The plaintiff does.

11                    THE COURT:  Do you have standing to seek such a

12        ruling?

13                    MR. CARUSO:  Sure, your Honor.

14                    THE COURT:  How?

15                    MR. CARUSO:  Well, the letter was necessary for

16        the shareholders to obtain $10 million of the purchase price

17        that --

18                    THE COURT:  Yes.  But how can the shareholders

19        enforce a contract like that or what purports to be a contract?

20                    MR. CARUSO:  Well, that's the question, isn't it?

21        What is it, your Honor?  Does it purport to be a contract?

22        They would say it's a proposed contract.  Our guys and our

23        shareholders say it is a contract.  And Sweet may say something

24        else once we hear from them.  We don't know what the facts are

25        at this circumstance, and I think the shareholders are entitled
```

```
 1        to a declaration as to precisely what the legal character of

 2        that August 26th letter is.

 3                  THE COURT:  This purports to be a contract between

 4        Zone and Sweet, right?

 5                  MR. CARUSO:  Yes.  In our --

 6                  THE COURT:  And you're the shareholder of -- former

 7        shareholder of Zone?

 8                  MR. CARUSO:  At the time the contract was executed

 9        by Sweet, we owned ZonePerfect and we controlled ZonePerfect.

10                  THE COURT:  What do you mean, "controlled"?

11                  MR. CARUSO:  Well, Christopher Baker --

12                  THE COURT:  You were a shareholder?

13                  MR. CARUSO:  Christopher Baker was the officer of

14        ZonePerfect who negotiated that contract and he has the

15        authority to execute it.

16                  THE COURT:  Yes, but he's not a plaintiff.

17                  MR. CARUSO:  Well, he's not a plaintiff because

18        Friedson acts as a representative under 6.2 of the Stock

19        Purchase Agreement for all the shareholders and is substituted

20        for them as attorney-in-fact and has a right to litigate these

21        claims for all the shareholders.

22                  THE COURT:  Let me ask, the matter -- I understand

23        that the matters before me are the plaintiff's motion to remand

24        to the state court.

25                  MR. CARUSO:  Yes.
```

```
 1                THE COURT:  And the defendant's motion to dismiss,
 2      which I assume can be transferred -- can be turned into a
 3      transfer to Delaware.
 4                MR. CARUSO:  Yes.
 5                THE COURT:  There is no question, is there, but
 6      that the Stock Purchase Agreement has a Mandatory Forum
 7      Selection Clause, correct?
 8                MR. CARUSO:  That's right, the Stock Purchase
 9      Agreement does.
10                THE COURT:  And there is no question but that the
11      availability of the escrow fund to the shareholders depends
12      ultimately on an interpretation of the stockholder -- the Stock
13      Purchase Agreement?
14                MR. CARUSO:  Ultimately, probably -- yes, that's
15      true.
16                THE COURT:  So, I don't understand why the
17      Mandatory Forum Selection Clause wouldn't govern this case
18      since it implicates the Stock Purchase Agreement as well as the
19      Escrow Agreement.
20                MR. CARUSO:  Well, the -- and that's because it
21      has its own Forum Selection Clause, your Honor, and they treat
22      it --
23                THE COURT:  So, we have a piece of this goes to
24      Delaware and a piece of it stays here?
25                MR. CARUSO:  Yes, that's how they wrote it.  That's
```

1    how they wrote the agreement.  Some claims get litigated under

2    the strict adherence to -- or the strict compulsory Forum

3    Selection Clause in the Stock Purchase Agreement.  Some claims

4    get litigated under the Escrow Agreement.

5              THE COURT:  Why would you want to do that?

6              MR. CARUSO:  I don't know, but that's the way they

7    did it.  They did it --

8              THE COURT:  No, but we can agree to go to

9    Delaware.  You don't have to make a fight about it.

10             You know, if I sent the case back to the state

11   court, the same questions that are here now are going to arise

12   in the state court, with the almost inevitable result that the

13   case will be dismissed because that court doesn't have the

14   power to send it to Delaware.

15             MR. CARUSO:  But, your Honor, I think that --

16             THE COURT:  So, why keep litigating all of this

17   stuff?  You're the plaintiff.  You want money.  You don't want

18   litigation.

19             MR. CARUSO:  I agree that I want the money and that

20   I want it as quickly as possible, but I also would like to keep

21   the litigation in Massachusetts, and I --

22             THE COURT:  You may not be able to do both.

23             MR. CARUSO:  I think if you look at the structure

24   of this transaction, you will see that there are claims set

25   forth in the Stock Purchase Agreement, Section 7.4, that need

1    to be litigated in Delaware.  Then there are escrow claims.

2    Let's call them claims --

3            THE COURT:  Yes, but the escrow claims depend, in

4    part, on 7.4.  I mean, this is an inter-related bunch of

5    questions.

6            MR. CARUSO:  Only in this case.

7            When you're dealing with the escrow funds, for

8    whatever reason, the parties decided that the escrow funds

9    could be litigated in Delaware, but they need not be litigated

10   in Delaware, and I can think of a few reasons why they might

11   have wanted that, and one of them was Wells Fargo was a party

12   to the Escrow Agreement.

13           THE COURT:  Well, if the escrow part of it is to

14   stay here and the Stock Purchase Agreement is to go there, it's

15   not at all clear to me why Sweet is in the case.

16           MR. CARUSO:  Well --

17           THE COURT:  I mean, if this is the only the escrow

18   piece of it, then Sweet is out of this piece of it.  I mean, as

19   a practical matter -- Mr. Caruso, right?

20           MR. CARUSO:  Yes, your Honor.

21           THE COURT:  -- it simply doesn't make sense to

22   divvy up the case like that.

23           MR. CARUSO:  I don't think we would be divvying up

24   the case because I think the -- the rights that we are seeking

25   to enforce under Section 7.4(b)(x), which was the provision

1    that said if you get the price reduction from Sweet, we'll give

2    you $10 million, we'll release $10 million from the escrow.

3    That provision is an exclusive remedy under the contract, and

4    it is --

5              THE COURT:  Whose remedy?

6              MR. CARUSO:  What?

7              THE COURT:  Whose remedy?

8              MR. CARUSO:  Mine.  The Friedson's remedy.  That's

9    the only remedy that the stockholders can have under the

10   contract for a -- it's both ours, actually.  It's both Abbott's

11   and Friedson's.

12             The Stock Purchase Agreement says that the remedies

13   under that provision are limited to -- let me read it, so I'm

14   not misquoting it.  "The parties acknowledge and agree that

15   damages for the purposes of this Section 7.4(b)(x) shall be

16   limited to the amount, if any, required to be paid shareholders

17   pursuant to the immediate prior sentence, which is the weighted

18   average price formula, in accordance with the formula set forth

19   above, and Sections 7.4(d) and 7.4(e) shall not be applicable

20   to the indemnification required."

21             Now, what that says to me, your Honor, is the

22   remedy for this -- whether or not we breach that letter is

23   contained in the -- as part of the escrow funds.  So, Abbott

24   makes a claim against the escrow funds for everything -- well,

25   up to $4.9 million, and we're fighting over whether or not

1    they're entitled to that escrow money.

2              Now, the escrow money -- the Escrow Agreement says

3    that we may go into Delaware to litigate that issue and --

4              THE COURT:  Well, I understand all that.  I'm not

5    quarreling about what the agreement says.

6              As I said, to begin with, I understood that the

7    Stock Purchase Agreement has a Mandatory Forum Selection

8    Clause.  The Escrow Agreement has one that is less mandatory.

9    I understand that.

10             MR. CARUSO:  And when I answered you on the

11   Mandatory Forum Selection Clause in the Stock Purchase

12   Agreement, what I was really saying to you is that Stock

13   Purchase Agreement Forum Selection Clause is mandatory for

14   certain claims under the SPA.  For example, the covenant not to

15   compete, that you would have to litigate in Delaware, but other

16   claims, escrow fund claims, they can be litigated anywhere

17   because they're governed by the Escrow Agreement.

18             And does it make sense to me why the parties chose

19   that?  Not really, but if they want --

20             THE COURT:  Well, if it doesn't make sense, why not

21   work around it?

22             MR. CARUSO:  Well, why -- I know I have

23   jurisdiction over Sweet in the Massachusetts courts.  I don't

24   know whether I'll have jurisdiction over Sweet in Delaware.

25   That may have been one of the reasons why the shareholders --

```
1                    THE COURT:  I don't understand that.  If you have

2      jurisdiction here and I send it to Delaware, you're not going

3      to get dismissed for lack of jurisdiction --

4                    MR. CARUSO:  Well, personal --

5                    THE COURT:  -- because they asked to go there.

6                    MR. CARUSO:  Personal jurisdiction --

7                    THE COURT:  But if they ask to go there, they

8      waived their -- any objection to personal jurisdiction.

9                    MR. CARUSO:  Well, I'm not sure if Sweet has asked

10     to go there, your Honor.  I think --

11                   THE COURT:  We can find out, can't we?

12                   MR. CARUSO:  Yes, I think we should find out before

13     we do that.  That would be something --

14                   THE COURT:  Let me talk to the defendants, then.

15                   MR. CARUSO:  Sure.

16                   THE COURT:  If the case gets transferred, does

17     Sweet propose to waive -- object to personal jurisdiction or

18     waive it?

19                   MR. PASCARELLA:  Your Honor, first I'd like to

20     apologize for not filing an appearance, not making our motion

21     yet, although we have it ready to submit for pro hac vice

22     admission.

23                   THE COURT:  It's okay.

24                   MR. PASCARELLA:  I appreciate the Court giving me

25     an opportunity to speak.
```

```
 1                To put it delicately, my clients have instructed me
 2     to be fiscally conservative, so to speak, so that I'm not
 3     incurring expense if I don't have to, and our feeling is Sweet
 4     should not be in this case at all, and I think that Abbott
 5     agrees because they've said it in at least six to eight
 6     different ways in their papers.
 7                Strangely enough, I think that the plaintiff agrees
 8     by some of the statements that they made, too.  And so --
 9                THE COURT:  Is it agreeable to Sweet to agree to
10     cooperate with discovery of Sweet --
11                MR. PASCARELLA:  Sure.
12                THE COURT:  -- if Sweet gets out?  Because the
13     ultimate issue, really, is whether they -- whether Abbott or
14     the escrow agent has to pay out the money.
15                MR. PASCARELLA:  Sure, your Honor.  In fact, I've
16     told both counsel that Sweet is a witness and will be a
17     cooperative witness.  That's what Sweet's position is in this
18     case, simply a witness.  It should not be a party defendant,
19     and I don't think --
20                THE COURT:  Let me ask Mr. Caruso.
21                If there is an agreement to cooperate by Sweet to
22     cooperate in the discovery, then you don't need them, do you?
23     Because you can get a full remedy from the escrow fund once you
24     showed that that agreement is an enforceable agreement.
25                MR. CARUSO:  Well, that gives me a substantial
```

13

1    piece of the relief that I was hoping to get by keeping it in

2    Massachusetts, but, your Honor, I don't --

3              THE COURT:  It doesn't have to stay in

4    Massachusetts for that.

5              MR. CARUSO:  Your Honor --

6              THE COURT:  Not that I wouldn't love to have it.

7              MR. CARUSO:  I think once we decide -- you know as

8    well as I that under the declaratory judgment statute in the

9    federal court and state court precedent further relief is

10   always permissible once the status of the parties is determined

11   by the Court.  So, once I know the facts -- Abbott has been

12   very secretive about why it didn't sign that agreement or

13   didn't let ZonePerfect sign the agreement.  They draw some

14   pretty interesting inferences from the complaint, which just

15   aren't supported by the complaint and just aren't true.

16             I don't know what the facts are.  The shareholders

17   don't know what the facts are.  So, it could be that Sweet has

18   some liability to the shareholders and we don't even know about

19   it.  It could be that Abbott could decide that --

20             THE COURT:  How can they have more liability that

21   has to do with the -- with a reduction in price?

22             MR. CARUSO:  Well, the shareholders --

23             THE COURT:  I mean, that's all this has to do

24   with.  It's essentially an agreement between the plaintiff and

25   Abbott.

14

```
1              MR. CARUSO:  Well, it was also an agreement where
2    Sweet had agreed to a certain price reduction, which would have
3    resulted in the shareholders getting that $10 million.  We
4    don't know why Sweet -- Sweet withdrew the agreement almost 30
5    days after it was signed.  We don't know why.  We don't know
6    why Abbott wouldn't have it signed right away.  They say that
7    it was because Baker was supposed to get it in a different
8    form.  Well, that's not supported by anything in the record or
9    the complaint.
10             THE COURT:  All right.  Well, so far there isn't
11   much of a record.
12             MR. CARUSO:  Yes, that's right.
13             THE COURT:  Mr. Desideri?
14             MR. DESIDERI:  No.
15             MR. D'ORSI:  Yes, your Honor.  A few points.
16             First with respect to something that may turn up
17   against Sweet.  Your Honor, I believe that the Court should
18   examine the remand motion based on the pleadings that were
19   filed and under those pleadings, there is no basis for
20   liability to the plaintiff on behalf of Sweet.  It is not a
21   party to any contract with Sweet.  It does not allege a cause
22   of action against Sweet, and as we set forth in our papers,
23   there is no actual controversy between the plaintiff and Sweet
24   in this action.  In a similarly very closely related
25   doctrines --
```

1           THE COURT:  I don't have a motion to dismiss by

2    Sweet, do I?

3           MR. D'ORSI:  Pardon?

4           THE COURT:  There's no motion by Sweet to dismiss.

5    There's a motion by Abbott to dismiss, but Sweet hasn't sought

6    to get out yet.

7           MR. D'ORSI:  No, but the plaintiff is seeking to

8    remand, and we are claiming they are not properly joined here

9    because there is no valid of cause action by the plaintiff

10   against Sweet.  So, there's no contract and there's no

11   relationship, and under the caselaw that we cite, not only is

12   there no actual case in controversy, as your Honor has

13   identified, there is no standing.  The closely related

14   doctrines -- they're almost actually the same.  If you read the

15   cases, it's hard to figure out exactly what the differences

16   are.  The courts always say they're very similar, but this is

17   the same concept.

18           If there is a contract or if there isn't between

19   Abbott and Sweet -- Abbott believes there isn't, but whether

20   there is or isn't, the plaintiff certainly isn't in a position

21   to obtain declaratory judgment, whether there is or isn't,

22   because it isn't a party to that agreement.

23           Abbott would respectfully submit, your Honor, with

24   respect to the -- the Forum Selection Clause issue, we believe

25   that the mandatory Shareholder Purchase Agreement  -- that that

1    clause governs.  We believe that a review of the plaintiff's
2    actual complaint and actual claims in this case -- what they
3    allege is that Abbott has failed to comply with Section
4    7.4(b)(x), Section 7.4(e), and Section 4.1(f) of the
5    Shareholder Purchase Agreement.  Each and every count of their
6    complaint is premised upon the rights and liabilities arising
7    out of those sections, and its prayer for relief seeks relief
8    with respect to specifically those sections.
9           Now, we don't believe, your Honor, there is any
10   escrow case, nor is there any dispute under the Escrow
11   Agreement, and here's why we believe that:
12          The Escrow Agreement is referenced in the complaint
13   and, indeed, the funds are being held in escrow, but none of
14   the claims in this complaint are brought under or deal with the
15   Escrow Agreement.  For example, there is no dispute as to the
16   meaning of the Escrow Agreement in this case, and there's no
17   allegation that Abbott has ever breached the Escrow Agreement
18   in any way.
19          In other words, the Shareholder Purchase Agreement
20   defines whether Abbott owes the money or not, and the Escrow
21   Agreement provides the mechanics for payment, but there has
22   never been any dispute over how those mechanics apply or
23   whether Abbott has or has not failed to comply with those
24   provisions.  The whole dispute is under the Shareholder
25   Purchase Agreement.

1          In fact, your Honor, other than referencing the

2   Escrow Agreement, the plaintiffs don't refer to a single

3   provision in their complaint of the Escrow Agreement, much less

4   allege that Abbott has somehow breached that.

5          In fact, the plaintiffs' claims in this case would

6   be no different and it would still have the same rights if

7   rather than attaching the Escrow Agreement, they just mentioned

8   that the funds are in escrow somewhere.  So, they are not

9   really seeking to enforce anything under the Escrow Agreement

10  because there's no dispute under the Escrow Agreement.

11         Accordingly, your Honor, we believe that the

12  Shareholder Purchase Agreement's Mandatory Forum Selection

13  Clause is the only one that's applicable here, and under that

14  clause, the entire case should be dismissed, and venue is

15  properly in Delaware.

16         THE COURT:  Well, why shouldn't I transfer it

17  rather than dismiss it?

18         MR. D'ORSI:  Because the weight of authority in the

19  First Circuit is that the proper remedy is dismissal.

20         THE COURT:  I didn't know that.  I usually transfer

21  instead of dismissing.

22         MR. D'ORSI:  In this situation, your Honor, I'm

23  almost -- your Honor, I've reviewed all the caselaw --

24         THE COURT:  Your 12(b)(6) motion is premised on

25  lack of jurisdiction because there's not adequate diversity, or

1    what?

2          MR. D'ORSI:  No.  12(b)(6) was brought because they

3    have violated the Forum Selection Clause.  And under the First

4    Circuit cases we cite in our brief, they say under those -- the

5    First Circuit holds in that situation, that the proper -- it

6    says the Court can transfer, I believe, but they say that the

7    proper remedy is dismissal.  If your Honor is asking me --

8          THE COURT:  All that means is that the courts

9    collect another filing fee.

10          MR. D'ORSI:  If you're asking me whether I believe

11    that to be a hugely significant or practical distinction, your

12    Honor, the answer is no.

13          THE COURT:  Does the bank want to be heard?

14          MR. MAGEE:  Wells Fargo really has no position on

15    the merits of this, your Honor.  We just know that under the

16    Escrow Agreement, we're obligated to disperse the accounts

17    according to whatever this Court or whatever court has

18    jurisdiction decides.  So, we've offered to stipulate that

19    we'll do that if any -- at another time, but apart from that,

20    we have no merits.

21          THE COURT:  Anything else, Mr. Caruso?

22          MR. CARUSO:  Are you going to -- do you want me to

23    talk about the 93A motion to dismiss directed at the 93A?

24          THE COURT:  No.

25          MR. CARUSO:  No.  You're just talking about the

1  Forum Selection Clause.

2              THE COURT:  Right.  There is a claim under the

3  Delaware motion as well.  So, I'm not sure what difference it

4  makes.

5              MR. CARUSO:  No.  I said my piece, your Honor.

6              THE COURT:  Mr. Pascarella, anything else?

7              MR. PASCARELLA:  No, your Honor.

8              THE COURT:  No, I didn't mean for me.  I just --

9              MR. PASCARELLA:  Okay.

10             THE COURT:  I just wanted to finish with him before

11  I got to you.

12             MR. PASCARELLA:  Okay.  You know what it is, your

13  Honor?  I'm not used to not taking an active part in filing

14  motions and so, perhaps, I am --

15             THE COURT:  So don't.

16             MR. PASCARELLA:  -- overly apologetic about that,

17  but what I wanted to point out was the Abbott arguments

18  regarding the diversity argument were basically the arguments

19  we would make.

20             THE COURT:  Okay.

21             MR. PASCARELLA:  And if the case stays here, I

22  don't think we can stay in because there wouldn't be

23  diversity.  If the case goes to the Federal District Court in

24  Delaware, I don't think we can be in for the same reasons.  So,

25  I would ask your Honor, most respectfully, to dismiss against

```
 1    us.  It's only if the case goes to the state court that we
 2    would have a situation where we'll have to probably make active
 3    motions to get out.
 4              THE COURT:  It seems to me that the case belongs to
 5    Delaware and not here and not in the state court.  The
 6    operative agreement is the Stock Purchase Agreement.  It has a
 7    Forum Selection Clause that says the District Court in
 8    Delaware.  So, it doesn't make sense to me to dismiss, only to
 9    have the plaintiff start it up again in Delaware.  So, I'm
10    going to transfer it.
11              With respect to Sweet, I do not believe that this
12    plaintiff has standing to enforce an agreement between Sweet
13    and Zone and the successor of Zone, Abbott.
14              Moreover, I do believe that Sweet's presence does
15    destroy diversity.  So, I will dismiss Sweet from the case, and
16    transfer the rest of it to the District Court in Delaware.
17              Thank you all.  And the motion to remand is denied,
18    and the escrow agent can file its -- whatever -- its assurance
19    that the money will be there, if and when it is decided --
20              MR. MAGEE:  Along with the motion to dismiss, if
21    appropriate, because there are no claims really against Wells
22    Fargo?
23              THE COURT:  Well, once you file whatever assurance
24    you're going to file, then I'll let the Delaware court decide
25    how to deal with you.  It's not before me at the moment.  So,
```

21

```
1    I'm not going to --
2              MR. MAGEE:  Thank you, your Honor.
3              THE COURT:  Thank you.
4              MR. CARUSO:  Thank you, your Honor.
5              MR. D'ORSI:  Thank you, your Honor.
6              (Adjourned, 2:47 p.m.)
7
8
9                        CERTIFICATE
10             I, Catherine A. Handel, Official Court Reporter of
11   the United States District Court, do hereby certify that the
12   foregoing transcript, from Page 1 to Page 21, constitutes to
13   the best of my skill and ability a true and accurate
14   transcription of my stenotype notes taken in the matter of
15   Civil No. 06-10057-RWZ, David Friedson, et al. vs. Abbott
16   Laboratories, et al.
17
18
19   _1-3-08_____          _____
     Date                         Catherine A. Handel, RPR-CM
20
21
22
23
24
25
```